EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re:                                   |                    |
|------------------------------------------|--------------------|
|                                          | 2025 TSPR 71       |
| Sergio Rádinson Caraballo (TS-11,666)    | 216 DPR ___        |

Número del Caso: CP-2017-0019

Fecha: 30 de junio de 2025

Oficina del Procurador General:

    Lcdo. Joseph Feldstein Del Valle
    Subprocurador General

    Lcda. Mabel Sotomayor Hernández
    Subprocuradora General

    Lcda. Yaizamarie Lugo Fontánez
    Procuradora General Auxiliar

Representante legal del querellado:

    Lcda. Daisy Calcaño López

Comisionado Especial:

    Hon. Gerardo Flores García

Materia: Conducta Profesional – Suspensión inmediata e indefinida del ejercicio de la abogacía y la notaría por infringir los Cánones 18, 20, 23, 35 y 38 del Código de Ética Profesional, así como por incumplir con lo dispuesto en los Arts. 2 y 56 de la Ley Notarial de Puerto Rico y la Regla 67 del Reglamento Notarial de Puerto Rico.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

Sergio Rádinson Caraballo     CP-2017-19     Conducta
        (TS-11,666)                          Profesional

*PER CURIAM*

En San Juan, Puerto Rico, a 30 de junio de 2025.

Nuevamente tenemos la obligación de ejercer nuestra autoridad disciplinaria para evaluar la conducta de un abogado notario y determinar si infringió los Cánones 18, 20, 23, 35 y 38 del Código de Ética Profesional, 4 LPRA Ap. IX, así como si incumplió con lo dispuesto en los Arts. 2 y 56 de la Ley Notarial de Puerto Rico, 4 LPRA secs. 2002 y 2091, y la Regla 67 del Reglamento Notarial de Puerto Rico, 4 LPRA Ap. XXIV.

Respondemos lo anterior en la afirmativa. En consecuencia, procedemos a suspender de forma inmediata e indefinida al Lcdo. Sergio Rádinson Caraballo (licenciado Rádinson Caraballo o abogado) del ejercicio de la abogacía y la notaría.

I

El licenciado Rádinson Caraballo fue admitido al ejercicio de la abogacía el 26 de junio de 1996 y prestó juramento como notario el 13 de diciembre del mismo año.[1]

A. Trasfondo fáctico y procesal de la *Queja* AB-2015-287

    1. Alegaciones de la *Queja*

El 7 agosto de 2015, la Sra. Ann Marie Colón Cruzado, también conocida como Ann Marie Garratón (promovente), presentó una *Queja* en contra del licenciado Rádinson Caraballo. En resumen, indicó que en julio de 2012 contrató con el abogado mediante acuerdo verbal para que éste realizara varios trámites legales para ella y sus padres, Don Roberto Antonio Colón Rolón (señor Colón Rolón) y Doña Ana Rosa Cruzado Pérez (señora Cruzado Pérez), ambos ya fallecidos.

La promovente expuso que la **primera gestión legal** que le solicitó al licenciado Rádinson Caraballo fue la preparación de una petición sobre declaratoria de herederos del señor Colón Rolón. Para este trabajo, el abogado le requirió un depósito de $3,000, el cual incluía la preparación y autorización de un testamento para la señora Cruzado Pérez. Al respecto, manifestó que, el 16 de agosto

---

[1] Mediante una Opinión *Per Curiam* emitida el 23 de julio de 2020, censuramos enérgicamente al Lcdo. Sergio Rádinson Caraballo (licenciado Rádinson Caraballo o abogado) debido a que éste infringió el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX. Además, le apercibimos que, de incurrir en conducta impropia en el futuro, podría ser sancionado de forma más severa. También le advertimos que debía ser más cuidadoso con el ejercicio de la función profesional que desempeña y ceñirse estrictamente a los deberes deontológicos que impone el Código de Ética Profesional, *supra*. *In re* Rádinson Pérez *et al.*, 204 DPR 522 (2020).

de 2012, el licenciado Rádinson Caraballo preparó y autorizó el testamento solicitado.

En cuanto a la **segunda gestión legal**, la promovente expresó que en enero de 2013 contrató al abogado para que presentara una demanda sobre daños y perjuicios, en representación suya y de su madre, en contra del hogar de envejecientes Hacienda El Quijote -en donde residía la señora Cruzado Pérez-, por haber incurrido en negligencia crasa en la atención médica brindada a esta última. Manifestó que para dicha gestión, el 3 de enero de 2013, pagó al licenciado Rádinson Caraballo un adelanto de $2,500.

Según expresó en su *Queja*, durante los meses de enero a noviembre de 2013, la promovente intentó infructuosamente que el abogado le brindara información relevante y actualizada acerca de los trámites relacionados con la petición sobre declaratoria de herederos, y la demanda sobre daños y perjuicios; que el licenciado Rádinson Caraballo le informaba que el trámite para la declaratoria de herederos tomaba cerca de un (1) año; que durante ese periodo de tiempo tuvo que soportar "repetidos avances no deseados de salir y cenar con el [abogado]";[2] que en una ocasión el licenciado Rádinson Caraballo "tuvo la desfachatez de llegar a la residencia [de ésta] en Puerto Rico alrededor de las 9:00 de la noche[,]

---

[2]   *Queja juramentada*, pág. 3.

pretendiendo en tono sugestivo e indeseado que le invitara a entrar".[3]

Asimismo, la promovente expuso que en noviembre de 2013 advino en conocimiento, por medio de la página cibernética del Poder Judicial de Puerto Rico, que el abogado no había presentado ni la petición sobre declaratoria de herederos ni la demanda de daños y perjuicios. Ante esto, el 8 de noviembre de 2013, la promovente le envió al licenciado Rádinson Caraballo una carta por correo certificado con acuse de recibo, en la cual le notificó de forma categórica "su despido 'inmediato y definitivo'"[4] de los casos para los cuales había sido contratado. En lo pertinente, consignó en la misiva lo siguiente:

> **Sirva la presente para notificarle formalmente su despido inmediato y definitivo** tanto como abogado de mi madre como mío efectivo la fecha de recibo de este documento.
>
> **Solicito y exijo de manera inmediata** que de usted haber aceptado formalmente nuestra representación legal ante algún tribunal (lo que a esta fecha desconozco) **prepare y radique esta misma semana las mociones de renuncia correspondientes y me devuelva todos los expedientes junto con copia ponchada de la moción de renuncia en o antes del próximo 18 de noviembre de 2013.** De no haber radicado una moción de representación legal o alguna acción a favor de mi madre o mía, favor de hacer disponibles esta misma semana para enviar a una persona autorizada por m[í] para recogerlos. Que quede meridianamente claro: usted no está autorizado para realizar ninguna otra gestión adicional que no sean las anteriormente descritas.
>
> Del mismo modo, solicito y **exijo que de usted no haber hecho ninguna de las acciones para las cuales se le contrató, devuelva en su totalidad la suma de dinero depositada;** toda vez que a la misma

---

[3]   Íd.

[4]   Íd.

> no se le debe acreditar trabajo alguno realizado
> por usted.
>
> De usted no seguir las instrucciones que se
> detallan y/o no entregar los expedientes en las
> fechas requeridas, me veré forzada a radicar una
> querella contra usted en el Tribunal Supremo de
> Puerto Rico. Sin otro particular por el momento y
> agradeciendo su pronta atención al presente asunto,
> quedo. (Negrilla suplida).[5]

La promovente indicó que, **luego de haber despedido al abogado como su representante legal**, el 10 de diciembre de 2013 éste remitió -sin su autorización- una carta al Director del hogar de envejecientes Hacienda El Quijote para requerirle copia del expediente de la señora Cruzado Pérez. Añadió que, el 16 de diciembre de 2013, el licenciado Rádinson Caraballo presentó -sin su autorización- una petición sobre declaratoria de herederos y la acompañó con una declaración jurada que "había autorizado" con fecha de 18 de diciembre de 2013. Al respecto, la promovente expresó que en la mencionada declaración jurada se indicaba que ella había suscrito ese documento en presencia del abogado, pero ésta aclaró que no firmó dicho documento ante el licenciado Rádinson Caraballo y, más aún, que ella estaba fuera de Puerto Rico en esa fecha.

Asimismo, la promovente mencionó que, a mediados de diciembre de 2013, a pesar de haberle requerido al abogado la entrega de los expedientes mediante la carta del 8 de noviembre de 2013, el licenciado Rádinson Caraballo se negó a entregarlos a la persona autorizada por la

---

[5] *Carta del 5 de noviembre de 2013*, págs. 1-2.

promovente cuando dicha persona acudió a la oficina del abogado.

De igual forma, la promovente planteó que el 19 de diciembre de 2013, el licenciado Rádinson Caraballo le envió una comunicación en la cual detalló las gestiones que había realizado en su representación y dando a entender que, mediante una conversación telefónica entre ambos, la promovente se había retractado de su petición de renuncia. Sin embargo, la promovente aclaró que dicha comunicación con el abogado fue breve y le reiteró lo expuesto en su comunicación previa a los fines de que desistiera de llamarla y enviarle mensajes de texto, así como le requirió la devolución de los expedientes y el dinero pagado.

La promovente añadió que durante la primera mitad del 2014 continuó requiriéndole al licenciado Rádinson Caraballo, personalmente y mediante terceros, que le devolviera los expedientes y el dinero entregado, pero éste se negó. También indicó que en abril de 2014, ante el fallecimiento de su madre, vino a Puerto Rico y acudió a la oficina del abogado para solicitarle nuevamente la devolución de los expedientes y el dinero pagado, pero éste se negó a entregarle lo solicitado.

Asimismo, la promovente expresó que en septiembre de 2014 volvió a la oficina del licenciado Rádinson Caraballo, esta vez en compañía de un amigo que sirviera como testigo. Allí reiteró su frustración por la falta de trámite por parte del abogado y le exigió la entrega de los expedientes. Ante esto, el licenciado Rádinson

Caraballo se disculpó y le solicitó a la promovente que le permitiera enmendar su proceder y cumplir con sus obligaciones. No obstante, el abogado no devolvió los expedientes ni el dinero pagado, pues indicó que lo haría en una fecha posterior.

Según esbozó la promovente, el 30 de septiembre de 2014 se le entregó una carta al licenciado Rádinson Caraballo para exigirle la devolución de los expedientes y el dinero pagado. Además, designó a una persona para recoger lo solicitado al día siguiente. Sin embargo, el licenciado Rádinson Caraballo nuevamente se negó a devolver lo requerido. Luego de varias llamadas telefónicas y ante la intervención de familiares de la promovente y del padre del abogado (el Lcdo. Francisco Rádinson Pérez), el 10 de octubre de 2014 el licenciado Rádinson Caraballo entregó los expedientes.

Finalmente, la promovente expuso que, al examinar los expedientes, se percató de que el abogado nunca presentó la demanda de daños y perjuicios en contra del hogar de envejecientes Hacienda El Quijote según solicitada, por lo que el término para presentar la misma había prescrito. Asimismo, indicó que el licenciado Rádinson Caraballo obtuvo una resolución en el caso de petición de declaratoria de herederos mediante una declaración jurada falsa.

2. Trámite previo a la *Contestación a la queja*

Como parte del trámite de la *Queja*, el 12 de agosto de 2015 se le concedió al abogado un término de diez (10)

días, contado a partir de la notificación de la comunicación, para que contestara los planteamientos en su contra. Transcurrido dicho término sin que el licenciado Rádinson Caraballo se expresara, el 22 de septiembre de 2015 se envió al abogado una segunda notificación para que contestara la *Queja*.

El 23 de noviembre de 2015, el licenciado Rádinson Caraballo solicitó una prórroga para contestar la *Queja* en o antes del 15 de diciembre de 2015. Ante esto, el 30 de noviembre de 2015 se le concedió un término de quince (15) días, contado a partir de la notificación de la comunicación, para presentar su contestación. Empero, el 15 de diciembre de 2015, el abogado solicitó una prórroga adicional de treinta (30) días para presentar su contestación. Así pues, el 26 de febrero de 2016, se le concedió al licenciado Rádinson Caraballo un término final de quince (15) días, contado a partir de la notificación de la comunicación, para que contestara la *Queja*.

En una moción del 18 de marzo de 2016, el abogado notificó que el Lcdo. Francisco Rádinson Caraballo estaría asumiendo su representación legal. No obstante, a pesar del término concedido el 26 de febrero de 2016, el licenciado Rádinson Caraballo no compareció a contestar la *Queja* presentada en su contra. Ante esto, el 14 de abril de 2016 se le concedió un término final e improrrogable de diez (10) días, contado a partir de la notificación de la comunicación, para que presentara su contestación a la *Queja*. Además, se le apercibió que, de no comparecer en

el término provisto, la *Queja* sería referida al Pleno del Tribunal para la acción correspondiente.

3. Contestación a la *Queja*

El 25 de abril de 2016, el licenciado Rádinson Caraballo contestó la *Queja* en su contra. En particular, adujo que ésta no expresaba de forma correcta la manera en que surgieron los hechos y que, además, se omitía información sobre trabajos realizados para beneficio de la promovente.

El abogado indicó que el primer trámite legal para el que fue contratado no fue para una declaratoria de herederos como expresó la promovente, sino para realizar un poder duradero a favor de ésta. Además, en cuanto a la contratación para la gestión de la demanda de daños y perjuicios, expuso que en diversas ocasiones le explicó a la promovente que no podría comenzar una reclamación por impericia médica sin contar con una certificación de un facultativo médico en torno a que hubiese ocurrido una negligencia en el manejo de la paciente. Añadió que por ello se comunicó con el hogar de envejecientes, solicitó el expediente médico y, responsablemente, lo refirió a un facultativo médico para su revisión.

Asimismo, el licenciado Rádinson Caraballo adujo que en todo momento la promovente fue orientada en torno a los trámites que se iban realizando, por lo que ésta conocía de los procedimientos notariales, judiciales y administrativos pendientes, en especial aquellos relacionados con la demanda de daños y perjuicios.

A su vez, el abogado expresó que en cuanto al trámite de la declaratoria de herederos era necesario obtener los certificados de nacimiento de la promovente y de su hermana, entre otros documentos. Específicamente, mencionó que todos los documentos requeridos le fueron entregados a excepción del certificado de nacimiento de la hermana, que era del estado de Hawaii y el mismo no estaba disponible en ese momento, razón por la cual se demoró la presentación de la petición ante el foro primario.

El licenciado Rádinson Caraballo destacó, además, que todas las gestiones que hizo en representación de la promovente las realizó con su autorización. Al respecto, planteó que la promovente se retractó de las cartas que había incluido junto a su *Queja* y le autorizó a continuar con los procesos acordados. En esa línea, añadió que la promovente aceptó haberse comunicado vía telefónica con él y que en dicha conversación ésta le autorizó a continuar con los procedimientos pendientes. Asimismo, reiteró que cuando la promovente acudió a su oficina en compañía de un amigo, ésta nuevamente le autorizó a que continuara con los procedimientos.

Por último, el abogado indicó que la promovente suscribió en su presencia la declaración jurada para el trámite de la petición sobre declaratoria de herederos que le autorizó a presentar ante el foro primario. A su vez, negó que hubiese realizado algún acercamiento indebido hacia la promovente o que haya acudido a la residencia de

ésta. Finalmente, negó haber actuado de forma incorrecta o inapropiada cuando ésta acudió a su despacho legal.

El 10 de junio de 2016, referimos el expediente de la *Queja* a la consideración de la Oficina de la Procuradora General[6] y a la Oficina de Inspección de Notarías (ODIN) para investigación e informe. Así, el 9 de agosto de 2016, la Oficina de la Procuradora General nos solicitó que dejáramos sin efecto el referido a su oficina hasta tanto la ODIN emitiera el correspondiente informe.

4. Informe de la ODIN

El 23 de agosto de 2016, la ODIN -por conducto de su Director, el Lcdo. Manuel E. Ávila De Jesús- presentó su *Informe*. En éste incluyó una relación de los hechos del caso, con particular énfasis en lo referente a la gestión de la petición de declaratoria de herederos. Al respecto, señaló que la promovente había expresado en su *Queja* que el licenciado Rádinson Caraballo presentó dicha petición el 18 de diciembre de 2013 y la acompañó con una declaración jurada que notarizó dos (2) días después de presentar la petición ante el foro primario. La ODIN añadió que la promovente expresó que en esa fecha ella no estaba en Puerto Rico y que jamás firmó la mencionada declaración jurada.

Luego de exponer el derecho aplicable, la ODIN esbozó su conclusión y recomendación en torno al asunto notarial

---

[6] En ese momento, la Procuradora General de Puerto Rico era la Hon. Margarita Mercado Echegaray.

antes expresado.  Por su pertinencia, citamos *ad verbatim*
lo expresado en el *Informe* de la ODIN:

> En la Queja se alegó que la Quejosa nunca suscribió ante el Querellado la Declaración Jurada de la Petición de Declaratoria de Herederos relacionada con el señor Colón Rolón.  Arguyó que el Querellado acreditó falsamente que la firma de la Quejosa fue puesta en un testimonio en presencia de [é]ste y que incurrió [en] conducta tipificada como delito en los Artículos 286 y 287 del Código Penal de Puerto Rico, 33 LPRA secs. 5379 y 5380 (preparación y presentación de escritos falsos). La Quejosa presentó una copia o impreso de su registro de asistencia a su lugar de trabajo, la cual muestra que el 18 de diciembre de diciembre de 2013 se registró su entrada a las 11:28 a.m. y su salida a las 5:39 p.m.  Por su parte, el Querellado se mantuvo firme en su dación de fe de haber legitimado la firma de la Quejosa en dicho documento el 18 de diciembre de 2013.

> Se desprende del Índice Mensual de Actividad Notarial presentado por el Querellado, correspondiente al mes de diciembre de 2013, que [é]ste autenticó la firma de la Quejosa en la fecha señalada.  A su vez, notamos que el Asiento Número 4,184 del Libro de Registro de Testimonio[s] del Querellado coincide con la persona suscribiente, así como con la fecha, y además expresa que el lugar de la legitimación de firma fue en San Juan, Puerto Rico.  También encontramos que, aunque el Querellado sostuvo su dación de fe, [é]ste guardó silencio con relación a la copia del registro de asistencia que presentó la Quejosa.  No obstante, señalamos que el asiento del Registro de Testimonios se presume válido mientras no se pruebe lo contrario, en este caso, mediante prueba clara, robusta y convincente.

> De otro lado, observamos que la firma en la Declaración Jurada no coincide con la firma de la Quejosa en la Queja y otros documentos anejados a la misma.  Sin embargo, únicamente contamos con la alegación de la Quejosa de que no firmó ni esa ni otra declaración jurada relacionada.  Por consiguiente, en esta fase del procedimiento disciplinario no se estableció mediante el estándar de prueba aplicable la alegada falsificación de la firma de la Quejosa en la Declaración Jurada.  De igual forma, destacamos el desfase entre la fecha de presentación de la Petición ante el TPI y la fecha de la firma de la Declaración Jurada que formó parte de [é]sta.

Bajo estas circunstancias, en la etapa en que se encuentra el procedimiento de la Queja evaluada, tenemos ante nosotros una controversia sobre la veracidad de lo alegado frente a lo firmado y registrado bajo la fe pública notarial por el Querellado. De ser ciertas las alegaciones de la Quejosa, tales hechos constituirían una violación a la fe pública notarial y se configuraría una violación al Artículo 56 de la Ley Notarial, *supra*, y a la Regla 67 del Reglamento Notarial, por cuanto se quebrantaría la esencia de la naturaleza misma de los testimonios de autenticidad al dar fe el Querellado de la firma en su presencia por la persona que no era quien dijo ser y en una fecha que no era cierta. En consecuencia, se conformaría una infracción de los Cánones 35 y 38 del Código de Ética Profesional, por cuanto, entre otros, el Querellado pudo haber dado fe de hechos ajenos a la verdad de lo acontecido y haber incumplido con su deber de practicar la profesión honrosa y dignamente.

Ante todo esto, expresamos que las controversias suscitadas están fuera del alcance de las facultades investigativas de esta Oficina. Por consiguiente, muy respetuosamente recomendamos a esta Superioridad, al amparo de la Regla 14(e) del Reglamento del Tribunal Supremo, que se refiera nuevamente la Queja de epígrafe a la Oficina de la Procuradora General para su evaluación complementaria y el informe correspondiente. (Corchetes suplidos y escolios omitidos).

Así las cosas, el 9 de septiembre de 2016 emitimos una *Resolución* mediante la cual le concedimos a la Oficina de la Procuradora General un término de sesenta (60) días para que realizara la investigación y el informe correspondiente.

5. Trámites en la Oficina de la Procuradora General y presentación del Informe

El 7 de noviembre de 2016, la Oficina de la Procuradora General presentó una moción en la que solicitó una prórroga para presentar su *Informe*. En síntesis, expresó que estaban realizando unas gestiones para obtener un informe del Instituto de Ciencias Forenses (ICF) referente a la

autenticidad de la firma de la declaración jurada que acompañó la petición de declaratoria de herederos objeto de este procedimiento disciplinario. Mediante *Resolución* del 30 de noviembre de 2016, concedimos la prórroga solicitada. No obstante, el 12 de enero de 2017, la Oficina del Procurador General[7] solicitó un término adicional y así lo concedimos mediante *Resolución* del 31 de enero de 2017.

La Oficina del Procurador General presentó su *Informe* el 10 de febrero de 2017. En éste, reseñó los asuntos relacionados con la *Queja*, la *Contestación a la Queja*, así como el resultado de la investigación adicional realizada a raíz de unos requerimientos de información enviados al abogado y a la promovente. Además, incluyó el resultado de la solicitud de servicios de peritaje del ICF, el cual concluyó lo siguiente:

> Luego del examen pericial correspondiente, el Sr. Edrick Torres Roche, Examinador de Documentos Dudosos del ICF, nos rindió un Informe, en el cual concluyó que la promovente, [la] Sra. Ann M. Garratón, no firmó la declaración jurada en controversia, autenticada por el licenciado R[á]dinson Caraballo con el número de testimonio 4,184. (Corchetes suplidos y subrayado omitido).

Asimismo, la Oficina del Procurador General consignó que no existía controversia de que en agosto de 2012, la promovente y el licenciado Rádinson Caraballo acordaron que éste otorgaría un testamento a la señora Cruzado Pérez y que tramitaría la petición de la declaratoria de herederos del padre de la promovente, el señor Colón Rolón,

---

[7]  De aquí en adelante haremos mención a la Oficina del Procurador General. En ese momento, el Procurador General de Puerto Rico era el Hon. Luis R. Román Negrón.

así como que para dicha fecha se le pagó al abogado el dinero acordado para ambos servicios. A su vez, expresó que no existía controversia de que el licenciado Rádinson Caraballo presentó la petición de declaratoria de herederos el 16 de diciembre de 2013, esto es un año y tres meses después de que se le contrató para ello. Añadió que independientemente de la controversia sobre si la promovente autorizó o no al abogado a la tramitación de la declaratoria de herederos, éste no fue diligente en tramitar la gestión profesional que le fue encomendada al tardar más de un año en presentarla. Al respecto, indicó que ante la alegación de la promovente de que en agosto de 2012 entregó los documentos requeridos para el trámite de dicha petición y el hecho de que el licenciado Rádinson Caraballo no adujo ni sometió prueba de que hubiese dado seguimiento a la promovente para que entregara los documentos pendientes durante ese largo periodo de tiempo, procedía concluir que el abogado pudo infringir los preceptos del Canon 18 de Ética Profesional, *supra*, ante la demora incurrida en realizar la gestión encomendada de tramitar la petición de declaratoria de herederos.

También expuso que la promovente arguyó que había discutido su reclamación en daños y perjuicios con el licenciado Rádinson Caraballo en diciembre de 2012 y que en enero de 2013 le pagó la cantidad de $2,500 como adelanto para la tramitación de esa reclamación, lo cual evidenció con copia de un cheque que emitió por esa cantidad a favor del abogado. Mientras, aun cuando el licenciado Rádinson

Caraballo admitió que fue contratado en los primeros meses del 2013 por la promovente para presentar una reclamación de daños y perjuicios, éste negó haber recibido adelanto de dinero para dicha gestión. Sobre este asunto, la Oficina del Procurador General indicó que no existía controversia en torno a que la primera y única gestión realizada por el abogado fue el 10 de diciembre de 2013 cuando pidió copia del expediente de la señora Cruzado Pérez al hogar de envejecientes en el cual ésta residía. Ante esto, expuso que el licenciado Rádinson Caraballo también pudo infringir el Canon 18 del Código de Ética Profesional, *supra*, al no tramitar de forma diligente el caso encomendado, pues demoró casi un año en realizar una primera gestión (solicitar el expediente) y no hizo trámite adicional hasta que entregó el expediente del caso en octubre de 2014.

De igual forma, indicó que en cuanto al pago de $2,500 como adelanto en honorarios para la tramitación de la reclamación de daños y perjuicios, la copia del cheque emitido por la promovente evidenciaba que ésta lo emitió a favor del abogado el 3 de enero de 2013. Así, no existía controversia de que la promovente no obtuvo cantidad alguna como indemnización en el caso de daños y perjuicios, por lo que el licenciado Rádinson Caraballo no podía retener el dinero pagado por concepto de adelanto en honorarios, según dispuesto en los Cánones 20 y 23 del Código de Ética Profesional, *supra*.

La Oficina del Procurador General añadió que las alegaciones de la promovente referentes a que el abogado realizó ciertas gestiones sin su autorización y cuando ya le había solicitado la renuncia y la entrega tardía del expediente, constituían posibles infracciones a los Cánones 18 y 20 del Código de Ética Profesional, *supra*. Por otra parte, en cuanto al planteamiento de la promovente acerca de que no firmó la declaración jurada que el abogado incluyó en la petición de declaratoria de herederos, se obtuvo la opinión pericial de un examinador del ICF que concluyó que la promovente no había firmado dicha declaración jurada "autenticada" por el licenciado Rádinson Caraballo. Ante lo cual, concluyó que el abogado pudo incurrir en violación a los Arts. 2 y 56 de la Ley Notarial de Puerto Rico (Ley Notarial), *supra*, la Regla 67 del Reglamento Notarial de Puerto Rico (Reglamento Notarial), *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*.

Por último, en relación con las alegaciones de la promovente sobre acercamientos indebidos por parte del licenciado Rádinson Caraballo, expresó que no se había presentado la información o la prueba necesaria para evaluar o corroborar el contexto en que se dieron los mismos. Ante esto, concluyó que no contaba "con la prueba clara, robusta y convincente para probar que el abogado incurrió en un comportamiento impropio que pudiera ser

éticamente censurable mediante este procedimiento disciplinario".[8]

En conclusión, expuso que el abogado incurrió en posibles infracciones a los Cánones 18, 20 y 23 del Código de Ética Profesional, *supra*, en sus gestiones como representante legal de la promovente, así como posibles infracciones a los Arts. 2 y 56 de la Ley Notarial, *supra*, la Regla 67 del Reglamento Notarial, *supra*, y los Cánones 18, 35 y 38 del Código de Ética Profesional, *supra*, en su gestión como notario.

6. <u>Reacción al Informe del Procurador General</u>

El 28 de febrero de 2017, emitimos una *Resolución* mediante la cual le concedimos al licenciado Rádinson Caraballo un término de veinte (20) días para que se expresara sobre el *Informe del Procurador General*. Allí le indicamos que, de no comparecer en el término provisto, el Tribunal tomaría su determinación sin el beneficio de su comparecencia.

Luego de la concesión de una prórroga, el 18 de mayo de 2017, el abogado presentó su *Escrito en torno a[l] Informe del Procurador General*. En resumen, planteó que no era responsable por las "imputaciones incorrectas e inexactitudes en los hechos"[9] según alegadas por la promovente, por lo que procedió a exponer su recuento de los hechos. Asimismo, negó que hubiese incurrido en las infracciones señaladas por la Oficina del Procurador

---

[8]   *Informe del Procurador General*, pág. 21.

[9]   *Escrito en torno a[l] Informe del Procurador General*, pág. 1.

General e indicó que estaba dispuesto a devolver $2,500 a la promovente.

Por último, solicitó la desestimación de la *Queja* por considerarla inoficiosa e inmeritoria y recalcó que "[e]n forma alguna… ha obrado con deliberada intención manifiesta y/o maldad y/o mala fe para causar daño de ninguna clase a la querellante".[10]

7. Presentación de la Querella

A la luz del *Informe* presentado por la ODIN y el *Informe del Procurador General*, el 23 de junio de 2017, le ordenamos a la Oficina del Procurador General que presentara la *Querella* correspondiente.

Así pues, el 23 de agosto de 2017, la Oficina del Procurador General presentó la *Querella* en contra del licenciado Rádinson Caraballo, en la cual le imputó los cargos siguientes:

> **PRIMER CARGO:** El licenciado R[á]dinson Caraballo infringió los preceptos del Canon 18 de Ética Profesional, al no defender diligentemente los intereses de su cliente y al no haber actuado conforme la profesión jurídica en general estima adecuada y responsable. Ello, ante la demora irrazonable incurrida en la tramitación de las gestiones encomendadas por su cliente (la presentación de una petición de declaratoria de herederos y la tramitación de una reclamación de daños y perjuicios contra una institución para envejecientes); y al realizar gestiones profesionales en representación de su cliente sin su autorización.
>
> El licenciado R[á]dinson Caraballo, también infringió los preceptos del Canon 18 de Ética Profesional al no ser diligente ni competente en el ejercicio de su función notarial, al otorgar la declaración de autenticidad número 4,184 en

---

[10]   *Escrito en torno a[l] Informe del Procurador General*, pág. 6.

contravención a la Ley Notarial y dar fe de hechos falsos en la misma.

**SEGUNDO Y TERCER CARGO:** El licenciado R[á]dinson Caraballo infringió los preceptos de [los] C[á]non[es] 20 y 23 de Ética Profesional al retener la cantidad de $2,500.00 que le fuera entregada como adelanto en honorarios de abogado para que tramitara una reclamación en daños, por la cual se acordó honorarios por contingencia, cuando su cliente no recibió cantidad de dinero alguna en concepto de indemnización, ni ha justificado que el adelanto recibido esté relacionado a un servicio profesional prestado.

**CUARTO CARGO:** El licenciado R[á]dinson Caraballo infringió los preceptos de sinceridad y honradez del Canon 35 de Ética Profesional al dar fe falsamente de que la Sra. Ann M. Colón Cruzado, también conocida como Ann M. Garratón, firmó ante él la declaración de autenticidad número 4,184; y al presentar la petición de declaratoria de herederos y remitir una comunicación a la institución de envejecientes solicitando un expediente, en representación de la promovente, cuando [é]sta ya le había desautorizado a ello al solicitarle la renuncia.

**QUINTO CARGO:** El licenciado R[á]dinson Caraballo infringió los preceptos de la fe pública notarial recogidos en el Artículo 2 de la Ley Notarial al prestar el testimonio de autenticidad número 4,184 y dar fe falsamente de que la Sra. Ann M. Cruzado, también conocida como Ann M. Garratón, suscribió dicho documento.

**SEXTO Y SÉPTIMO CARGO:** El licenciado R[á]dinson Caraballo violó el Artículo 56 de la Ley Notarial y la Regla 67 del Reglamento Notarial al legitimar la firma de la Sra. Ann M. Cruzado, también conocida como Ann M. Garratón en la declaración número 4,184 cuando la promovente no firmó la misma.

**OCTAVO CARGO:** El licenciado R[á]dinson Caraballo violó el Canon 38 de Ética Profesional, el cual contempla el deber de los abogados de exaltar el honor y la dignidad de la profesión, aunque al así hacerlo conlleve sacrificios personales, y evitar hasta la apariencia de conducta impropia. Ello, al otorgar la declaración de autenticidad número 4,184 en contravención a la Ley Notarial y al consignar hechos falsos en la misma, al no tramitar diligentemente las gestiones encomendadas por su cliente, retener dinero por gestiones no

realizadas, y realizar gestiones a nombre de ésta
sin su autorización.   (Corchetes suplidos).

B. Proceso disciplinario ante el Comisionado Especial

Luego de varios trámites procesales, el 22 de febrero de 2022, designamos al Lcdo. Gerardo A. Flores García (Comisionado Especial), exjuez del Tribunal de Apelaciones, para que atendiera los procedimientos de la *Querella* que nos ocupa y presentara un *Informe* con las determinaciones de hechos y recomendaciones que estimara pertinentes.

Así las cosas, el 28 de febrero de 2022, el Comisionado Especial emitió una *Orden*, en la cual solicitó a ambas partes una lista de la prueba que presentarían en la vista en su fondo y citó a una vista para el 31 de marzo de 2022. No obstante, a petición del abogado, el 18 de marzo de 2022, el Comisionado Especial recalendarizó la vista para el 27 de abril de 2022 y ordenó a las partes a comparecer mediante una moción conjunta respecto a la prueba documental y testifical que se presentaría en la vista en su fondo.

El 30 de marzo de 2022, el licenciado Rádinson Caraballo presentó su *Contestación a la Querella y notificación de devolución de los honorarios.* En ésta expresó que, al examinar el expediente, se percató de que no había contestado la *Querella*, así que solicitó que se aceptara su contestación en esa etapa del procedimiento disciplinario.   Además, indicó que en esa fecha había enviado a la promovente tres (3) giros para un total de

$2,500 por concepto del depósito que ésta había pagado para la tramitación de la reclamación de daños y perjuicios.[11]

Asimismo, el abogado reiteró su versión de los hechos sobre las gestiones realizadas para la promovente y expresó que en sus años en la profesión legal ésta sería la primera *Querella* presentada en su contra, ya que las quejas instadas previamente fueron archivadas "y ninguna de ellas continu[ó] el trámite de la radicación de una querella y sus consecuencias".[12] De igual forma, expuso que aun cuando la conducta desplegada por éste pudiera encontrarse reñida con los postulados éticos de la profesión legal y las disposiciones de la Ley Notarial, existen circunstancias atenuantes que deberían ser evaluadas al momento de este Tribunal ejercer su función disciplinaria.

Además, el licenciado Rádinson Caraballo señaló que goza de una excelente reputación en la comunidad; que se encuentra sumamente arrepentido por todo lo relacionado con el proceso disciplinario que enfrenta, y lamentaba los inconvenientes que ello haya causado. Al respecto, expresó que "[e]ste proceso ha sido muy aleccionador y luego de una detenida reflexión… expresa y reitera su profundo arrepentimiento por no haber atendido los requerimientos de [la promovente], conociendo las graves consecuencias de esta acción. No obstante, [tiene] la

---

[11]   El licenciado Rádinson Caraballo destacó que no pudo devolver con premura dicha cantidad debido a la situación económica provocada por el impacto del Huracán María, los terremotos y la pandemia. *Contestación a la Querella y notificación de devolución de los honorarios*, pág. 7.

[12]   *Contestación a la Querella y notificación de devolución de los honorarios*, pág. 5.

certeza moral y convicción genuina de que situaciones como [é]sta no se repetirán nunca más". (Corchetes suplidos).[13]

El 31 de marzo de 2022, el Comisionado Especial emitió una *Orden* a la Oficina del Procurador General para que se expresara en torno a la *Contestación a la Querella y notificación de devolución de los honorarios* presentada por el licenciado Rádinson Caraballo. En cumplimiento de orden, dicha oficina presentó su escrito el 29 de abril de 2022. Específicamente, planteó que el abogado no había realizado alegación alguna sobre su desempeño notarial al legitimar el testimonio de autenticidad número 4,184 del 18 de diciembre de 2013. Además, señaló que tampoco surgía que el licenciado Rádinson Caraballo hubiese aceptado expresamente alguno de los cargos o la conducta imputada por la Oficina del Procurador General, esto a pesar de haber indicado que estaba arrepentido y que no volvería a repetirse tal conducta.

La Oficina del Procurador General también destacó que, contrario a lo expresado por el abogado en el sentido de que ésta es su primera querella y que las quejas presentadas previamente fueron archivadas, el licenciado Rádinson Caraballo fue censurado enérgicamente en el 2020 por infringir el Canon 18 del Código de Ética Profesional.[14]

Por último, en cuanto a la devolución del depósito, la Oficina del Procurador General expuso que el 21 de abril

---

[13] *Contestación a la Querella y notificación de devolución de los honorarios*, pág. 7.

[14] Para referencia, véase *In re* Rádinson Pérez, *et al.*, 204 DPR 522 (2020).

de 2022 la promovente confirmó el recibo de los $2,500 que envió el abogado. No obstante, dicha oficina resaltó que la devolución del dinero no le eximía de las infracciones imputadas, pero podrían considerarse como un atenuante.

Más adelante, el 16 de mayo de 2022, las partes presentaron una *Moción conjunta sobre la prueba de la vista final*. Así las cosas, el 19 de mayo de 2022, el Comisionado Especial pautó la vista en su fondo para el 17 de junio de 2022. Llegado el día de la vista señalada, comparecieron la Lcda. Yaizamarie Lugo Fontánez y el Lcdo. Christopher Santiago Contreras, ambos de la Oficina del Procurador General, y la Lcda. Daisy Calcaño López, representante legal del licenciado Rádinson Caraballo. Allí el Comisionado Especial indicó que la *Contestación a la Querella y notificación de devolución de los honorarios* presentada por el abogado fue aceptada y admitida como parte del expediente.

Durante la vista, la abogada de la Oficina del Procurador General expresó que sometería su caso con los documentos y las estipulaciones que obraban en el expediente. Por su parte, la representante legal del abogado solicitó que se le permitiera a éste dirigirse mediante una alocución, lo cual fue aceptado por el Comisionado Especial. Así pues, el licenciado Rádinson Caraballo ofreció sus disculpas a la promovente y al Tribunal e indicó que el proceso disciplinario había sido aleccionador tanto en lo personal como en lo profesional. Luego de esto, las partes dieron por sometido el caso.

El 12 de julio de 2024, el Comisionado Especial presentó su *Informe*, en el cual expuso que se presentó prueba clara, robusta y convincente que apoyaba los cargos imputados. En consecuencia, determinó que el licenciado Rádinson Caraballo infringió los Cánones 18, 20, 23, 35 y 38 del Código de Ética Profesional, *supra*, e incumplió con lo dispuesto en los Arts. 2 y 56 de la Ley Notarial, *supra*, y la Regla 67 del Reglamento Notarial, *supra*.

El 13 de agosto de 2024, emitimos una *Resolución* mediante la cual le concedimos un término adicional al abogado para expresarse sobre el *Informe del Comisionado Especial.* Finalmente, éste presentó su escrito el 5 de septiembre de 2024 y reiteró sus más sinceras excusas. A su vez, suplicó que tomemos en consideración "los atenuantes, el arrepentimiento, la devolución de los $2,500.00, entre otras circunstancias, así como la proporcionalidad de la conducta y la sanción a ser impuesta".[15] Añadió que reconoce la facultad de este Tribunal para sancionar la conducta de los abogados a la luz del Código de Ética Profesional y entiende que "dicho proceso debe ser dirigido a un enfoque de evaluar la conducta profesional y no el de castigar y privar a [un] abogad[o] de su sustento y el de su familia".[16]

---

[15] *Reacción al Informe del Comisionado Especial Hon. Gerardo A. Flores García*, pág. 9.

[16] Véase *Reacción al Informe del Comisionado Especial Hon. Gerardo A. Flores García*, pág. 10.

Así las cosas, el caso quedó sometido en los méritos para su adjudicación, por lo cual procedemos a exponer la normativa aplicable.

II

Como parte de nuestro poder inherente para regular la abogacía en Puerto Rico, tenemos la obligación de asegurarnos de que los miembros admitidos al ejercicio de la profesión legal realicen sus funciones de forma responsable, competente y diligente. *In re* Santiago Ortiz, 2024 TSPR 127, 215 DPR ___ (2024); *In re* Soto Peña, 213 DPR 663, 675 (2024); *In re* Rivera Justiniano, 212 DPR 385, 400-401 (2023); *In re* Valenzuela Flores, 211 DPR 934, 939 (2023).

El Código de Ética Profesional instituye las normas mínimas de conducta que rigen la práctica de la abogacía en nuestra jurisdicción, esto con el fin de promover los más altos principios éticos en beneficio del cliente, de la profesión legal, de la sociedad y de las instituciones de justicia. *In re* Santiago Rojas, 2025 TSPR 30, 215 DPR ___ (2025); *In re* Soto Peña, *supra*, pág. 675; *In re* González Díaz, 201 DPR 145, 150 (2018); *In re* Montalvo Delgado, 196 DPR 541, 549 (2016).

A. Incumplimiento con los Cánones del Código de Ética Profesional

  1. Canon 18 (Competencia del abogado y consejo al cliente)

En lo pertinente, el Canon 18 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 18, dispone que:

  [e]s deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso

su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Como parte de dicho deber, se exige al abogado rendir una labor idónea, competente, diligente, oportuna y sin dilaciones, ya que actuar de manera contraria implica desplegar una conducta negligente, indiferente y displicente en los asuntos que se le han encomendado. *In re* Santiago Ortiz, *supra*; *In re* Sánchez Pérez, 210 DPR 235, 262-263 (2022).

De acuerdo con lo que hemos expresado, el deber de diligencia dispuesto en el Canon 18 del Código de Ética Profesional, *supra*, resulta "del todo incompatible con la desidia, despreocupación y displicencia" de un abogado al atender los asuntos encomendados por su cliente. *In re* Vélez Torres, 209 DPR 848, 869 (2022); *In re* Miranda Daleccio, 193 DPR 753, 762 (2015).

Siendo así, cuando un abogado acepta la encomienda de representar a una persona y no ejecuta sus funciones de forma adecuada y responsable, infringe el Canon 18 del Código de Ética Profesional, *supra.*

2. Canon 20 (Renuncia de representación legal)

El Canon 20 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 20, contempla lo relacionado a la renuncia de un abogado a la representación legal de un cliente. Específicamente, este canon indica lo siguiente:

> Cuando el abogado haya comparecido ante un tribunal en representación de un cliente no puede ni debe renunciar la representación profesional de su cliente sin obtener primero el permiso del tribunal y debe solicitarlo solamente cuando

exista una razón justificada e imprevista para ello.

Antes de renunciar la representación de su cliente el abogado debe tomar aquellas medidas razonables que eviten perjuicio a los derechos de su cliente tales como notificar de ello al cliente; aconsejarle debidamente sobre la necesidad de una nueva representación legal cuando ello sea necesario; concederle tiempo para conseguir una nueva representación legal; aconsejarle sobre la fecha límite de cualquier término de ley que pueda afectar su causa de acción o para la radicación de cualquier escrito que le pueda favorecer; y el cumplimiento de cualquier otra disposición legal del tribunal al respecto, incluyendo la notificación al tribunal de la última dirección conocida de su representado.

Al ser efectiva la renuncia del abogado debe hacerle entrega del expediente a su cliente y de todo documento relacionado con el caso y reembolsar inmediatamente cualquier cantidad adelantada que le haya sido pagada en honorarios por servicios que no se han prestado.

Hemos señalado que, cuando un abogado se ve impedido de representar adecuadamente a su cliente, constituye un error de juicio y una violación al Canon 20 del Código de Ética Profesional, *supra*, continuar llevando el caso. *In re* Rivera Rodríguez, 202 DPR 1026, 1049 (2019). De igual forma, el mencionado canon exige al abogado que, al ser efectiva la renuncia, le entregue a su cliente el expediente y todo documento relacionado con el caso. Asimismo, deberá reembolsar inmediatamente cualquier cantidad que le haya sido pagada en honorarios por servicios que no prestó. Íd.

3. Canon 23 (Adquisición de intereses en litigio y manejo de los bienes del cliente)

El Canon 23 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 23, preceptúa que la naturaleza fiduciaria de la relación entre el abogado y su cliente exige que dicha

relación esté fundada en la honradez absoluta. *In re* Rivera Rodríguez, *supra*, pág. 1049.

En particular, este Tribunal ha expresado que un abogado que retiene fondos de sus clientes incurre en una práctica altamente lesiva a la profesión legal y menoscaba esa relación de honradez y confianza que debe existir entre el representante legal y su cliente. *In re* Rivera Rodríguez, *supra*, pág. 1050; *In re* González Díaz, *supra*, pág. 152. Ante esto, hemos resuelto que infringe el Canon 23 del Código de Ética Profesional, *supra*, un abogado que retiene cualquier cantidad de dinero perteneciente a su cliente. *In re* González Díaz, *supra*, pág. 152; *In re* Rivera Irizarry, 155 DPR 687, 693 (2001). Incluso, la dilación en la devolución de esos fondos es causa suficiente para infringir el mencionado canon. *In re* Rivera Rodríguez, *supra*, pág. 1050; *In re* González Díaz, *supra*, pág. 152; *In re* Colón Hernández, 189 DPR 275, 284 (2013).

4. Canon 35 (Sinceridad y honradez)

En lo que concierne, el Canon 35 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 35, expone lo siguiente:

> La conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada.

> No es sincero ni honrado el utilizar medios que sean inconsistentes con la verdad ni se debe inducir al juzgador a error utilizando artificios o una falsa relación de los hechos o del derecho.

De acuerdo con este deber ético, se impone a todo abogado el deber de comportarse de forma sincera y honrada. *In re* Ayala Oquendo, 2025 TSPR 9, 215 DPR ___

(2025). Como hemos expresado, no es sincero ni honrado utilizar medios incompatibles con la verdad. *In re Rádinson Pérez, et al.*, *supra*, pág. 540. Sobre esto, en *In re* Sierra Arce, 192 DPR 140, 147 (2014), planteamos que:

> [l]a profesión jurídica está predicada en la búsqueda y defensa de la verdad. Por lo tanto, resulta inherentemente contrario a su función que un abogado se desvíe de su obligación de ser sincero y honrado en toda faceta en que se desempeñe, ya sea en su vida profesional o privada. (Citas omitidas).

Por todo lo cual, los preceptos expuestos en el Canon 35 del Código de Ética Profesional, *supra*, se transgreden con el solo hecho de faltar a los valores de veracidad y honradez, los cuales son pilares fundamentales de la profesión legal. *In re* Ortiz Sánchez, 201 DPR 765, 781 (2019); *In re* Pagán Díaz, 198 DPR 398, 407 (2017).

5. Canon 38 (Preservación del honor y dignidad de la profesión)

El Canon 38 del Código de Ética Profesional, 4 LPRA Ap. IX, C. 38, puntualiza que los dos valores fundamentales con los que debe cumplir un abogado son la dignidad y el honor al ejercer la abogacía y en su vida privada. *In re* Villalona Viera, 206 DPR 360, 374-375 (2021); *In re* Sánchez Reyes, 204 DPR 548, 574 (2020).

Así pues, el mencionado canon instituye el deber de todo abogado de exaltar el honor y la dignidad de su profesión, así como de evitar hasta la apariencia de conducta profesional impropia. Esto significa que todo profesional del Derecho debe desempeñarse de manera escrupulosa y guiado por un alto sentido de responsabilidad, teniendo siempre presente la función

social que ejerce y la institución que representa. *In re* Soto Peña, *supra*, págs. 677-678; *In re* Cardona Estelritz, 212 DPR 649, 667 (2023); *In re* Rádinson Pérez *et al.*, *supra*, pág. 542.

De acuerdo con lo antes esbozado, cada abogado debe ser consciente de que es un espejo en el cual se refleja la imagen de la profesión legal. *In re* Sierra Arce, *supra*, pág. 148. Así, el abogado es la imagen misma de todo el andamiaje judicial y del valor de la justicia. *In re* Irizarry Rodríguez, 193 DPR 633, 666 (2015).

A su vez, el Canon 38 del Código de Ética Profesional, *supra*, ordena, incluso, evitar la apariencia de conducta impropia. Sobre esto, hemos enfatizado en que la confianza, el respeto y la imagen que la sociedad deposita en cada uno de los abogados, en la profesión y en la institución de la justicia desmerece cuando la actuación del abogado representa incorrección. *In re* Irizarry Rodríguez, *supra*, pág. 666.

6. Art. 2 de la Ley Notarial de Puerto Rico

El Art. 2 de la Ley Notarial, 4 LPRA sec. 2002, consagra el principio de la fe pública notarial y los deberes que constituyen los pilares fundamentales que todo notario debe cumplir. *In re* González Foster, 2025 TSPR 27, 215 DPR ___ (2025). Específicamente, el mencionado artículo dispone lo siguiente:

> El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes

> especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original).

Dicha disposición recoge el principio cardinal de la fe pública notarial y en virtud de éste el notario viene llamado a ejercer su ministerio con esmero, diligencia y estricto celo profesional. *In re* Román Jiménez, 213 DPR 467, 474 (2024); *In re* Vázquez Margenat, 204 DPR 968, 977 (2020). Al respecto, hemos resaltado que la fe pública notarial es tan importante que es innecesario que el notario falte intencionalmente a la verdad para que incurra en una violación a ésta. *In re* Vázquez Margenat, *supra*, pág. 978; *In re* Vázquez Pardo, 185 DPR 1031, 1041 (2012).

En la misma línea, hemos expresado que "la certificación de un hecho falso es una de las faltas más graves que un notario puede cometer, aunque no medie intención. Esto es así pues autorizar una declaración jurada sin la presencia del firmante constituye la certificación de un hecho falso que transgrede la fe pública notarial y afecta la confianza del sistema de autenticidad documental". (Citas omitidas). *In re* Rafols Van Derdys, 211 DPR 34, 412 (2022).

7. Art. 56 de la Ley Notarial de Puerto Rico

El Art. 56 de la Ley Notarial, 4 LPRA sec. 2091, establece que un testimonio o declaración de autenticidad es el documento en el que un notario, a petición de una

parte interesada, da testimonio de fe de un documento no matriz, además de su fecha. En resumen, el notario acredita que, en fecha cierta, se firmó un documento en su presencia por la persona que evidentemente es quien dice ser. *In re* Raffucci Caro, 213 DPR 587, 601 (2024).

8. Regla 67 del Reglamento Notarial de Puerto Rico

De acuerdo con la Regla 66 del Reglamento Notarial, 4 LPRA Ap. XXIV, uno de los tipos de testimonio que puede autorizar un notario es el de legitimación de firma. En particular, la Regla 67 del Reglamento Notarial, 4 LPRA Ap. XXIV, dispone que dicho testimonio "acredita el hecho de que, en determinada fecha, una firma ha sido puesta en presencia del notario y por quien evidentemente es quien dice ser".

En virtud de lo anterior y debido a que la declaración jurada constituye un testimonio de legitimación de firma, hemos señalado que los notarios no pueden dar fe pública en un documento si la persona que pretende otorgarlo no comparece personalmente. *In re* Maldonado De Jesús, 208 DPR 601, 613-614 (2022). Así pues, queda claro que el notario que autorice una declaración jurada en ausencia del firmante "quebranta la fe pública notarial y afecta la confianza depositada en el sistema de autenticidad documental". Íd., pág. 614. Además, "incurre en una de las faltas más graves, a saber, la certificación de un hecho falso". *In re* Villalona Viera, *supra*, pág. 372.

B. El rol del Comisionado Especial

El Comisionado Especial que designemos para atender una querella en contra de un abogado ocupa el rol de un juez de instancia, ya que tiene la encomienda de recibir la prueba y evaluarla, así como dirimir la credibilidad de aquella prueba testifical presentada. *In re Rivera Justiniano*, *supra*, pág. 404; *In re Colón Ortiz*, 204 DPR 452, 460-461 (2020). Como regla general, las determinaciones de un Comisionado Especial merecen nuestra deferencia. *In re Rivera Justiniano*, *supra*, pág. 404; *In re Meléndez Mulero*, 208 DPR 541, 554 (2022).

Este Tribunal sostendrá, de ordinario, las determinaciones de hecho del Comisionado Especial, salvo que se demuestre prejuicio, parcialidad o error manifiesto. *In re Colón Ortiz*, *supra*, pág. 461; *In re Soto Aguilú*, 202 DPR 137, 146 (2019). Claro está, es importante resaltar que podemos adoptar, modificar o rechazar el informe presentado por el Comisionado Especial. *In re Meléndez Mulero*, *supra*, pág. 554.

Pasemos a evaluar si el licenciado Rádinson Caraballo infringió los Cánones 18, 20, 23, 35 y 38 del Código de Ética Profesional, *supra*, así como si incumplió con lo dispuesto en los Arts. 2 y 56 de la Ley Notarial, *supra*, y la Regla 67 del Reglamento Notarial, *supra*.

III

Para fines de adjudicar la conducta imputada en este proceso disciplinario, corresponde que evaluemos las determinaciones de hechos que incluyó el Comisionado

Especial en su *Informe*. En particular, éstas son las determinaciones allí esbozadas:

1. El Lcdo. Sergio R[á]dinson Caraballo fue admitido al ejercicio de la abogacía el 26 de junio de 1996, y al ejercicio del notariado el 13 de diciembre de 1996.

2. En o alrededor de agosto de 2012, la Sra. Ann M. Colón Cruzado, también conocida como Ann M. Garratón, contrató verbalmente los servicios profesionales del licenciado R[á]dinson Caraballo para la preparación y presentación de una declaratoria de herederos de Don Roberto Colón y la preparación y autorización de un testamento a Doña Ana R. Cruzado.

3. El primer pago que la Sra. Colón Cruzado realizó al licenciado R[á]dinson Caraballo fue en agosto de 2012, para la preparación de la declaratoria de herederos y del testamento de su madre.

4. En el mes de agosto de 2012, la señora Colón Cruzado entregó al licenciado R[á]dinson Caraballo copia de su certificado de nacimiento, y varios días después, éste se comunicó para informar que necesitaba el acta de defunción de su padre y el acta de nacimiento de su hermana, los cuales le entregó días después.

5. El 16 de agosto de 2012, el licenciado R[á]dinson Caraballo otorgó un testamento abierto a la Sra. Ana R. Cruzado Pérez, madre de la promovente.

6. En enero de 2013, la promovente contrató al licenciado R[á]dinson Caraballo para la presentación de una demanda en daños y perjuicios, en representación suya y de su madre, Ana Cruzado Pérez, en contra del Hogar de Envejecientes Hacienda El Quijote, por una alegada negligencia médica.

7. Para la referida demanda de daños y perjuicios se pactaron honorarios contingentes de la cantidad que se obtuviese por sentencia o acuerdo transaccional.

8. En enero de 2013, el licenciado R[á]dinson Caraballo recibió un cheque de dos mil quinientos dólares ($2,500.00) de parte de la

señora Colón Cruzado, como adelanto para la tramitación de la demanda por daños y perjuicios.

9. El 15 de marzo de 2013, la señora Colón Cruzado pagó al licenciado R[á]dinson Caraballo cuatrocientos dólares ($400.00) por el otorgamiento de un poder especial.

10. Entre los meses de enero a noviembre de 2013, el licenciado R[á]dinson Caraballo no realizó gestiones profesionales relacionadas a la petición de declaratoria de herederos ni al caso de daños y perjuicios.

11. El 8 de noviembre de 2013, la señora Colón Cruzado remitió una comunicación por correo certificado y acuse de recibo, al licenciado R[á]dinson Caraballo, en la cual lo desautorizaba a realizar alguna gestión adicional en los casos que no fuese la presentación de las mociones de renuncia ante algún tribunal y la entrega de su expediente. Además, solicitó que, de no haber hecho ninguna de las acciones para las cuales se le contrató, le devolviese la totalidad del dinero pagado. No está en disputa de que el licenciado R[á]dinson Caraballo recibió esta carta.

12. El 20 de noviembre de 2013, el licenciado R[á]dinson Caraballo envió por correo electrónico un borrador de Petición de Declaratoria de Herederos a la promovente.

13. El 12 de diciembre de 2013, la señora Colón Cruzado contestó el correo electrónico del licenciado R[á]dinson Caraballo indicando que le notificaba por segunda vez que estaba despedido como representante legal para presentar la declaratoria de herederos y la demanda por daños y perjuicios. Además, le indicó que enviaría a un representante a recoger los documentos entregados a él y que luego lo contactaría para la devolución del dinero depositado.

14. El 10 de diciembre de 2013, sin autorización de la señora Colón Cruzado, el querellado remitió una comunicación al Hogar de Envejecientes Haciendan El Quijote, solicitando copia del expediente de la Sra. Ana Rosa Cruzado.

15. El 13 de diciembre de 2013, el [l]icenciado R[á]dinson Caraballo realizó trámites ante

ASUME y el Registro de Testamentos para obtener certificaciones negativas para la presentación de la Petición de Declaratoria de Herederos.

16. El 16 de diciembre de 2013, el licenciado R[á]dinson Caraballo, en representación de la promovente, presentó una Petición sobre Declaratoria de Herederos, sin autorización de su cliente. Esta fue identificada con el alfanumérico KJV2013-2628.

17. Con la Petición de Declaratoria de Herederos, se anejó una declaración jurada con fecha de 18 de diciembre de 2013, identificada como affidávit Núm. 4,184, en la cual el licenciado R[á]dinson Caraballo dio fe de que el Juramento de la Petición del Caso Núm. KJV2013-2628 fue jurado y suscrito en su presencia por la Sra. Ann Marie Colón Cruzado, a quien conocía personalmente.

18. El licenciado R[á]dinson Caraballo incluyó en su Libro de Testimonios el affidávit 4,184 de 18 de diciembre de 2013, y dio fe de conocer personalmente a la promovente de que [é]sta firmó la Petición de Declaratoria de Herederos en su presencia.

19. En el índice notarial del mes de diciembre de 2013, que se presentó ante ODIN, el querellado informó que, en el affidávit 4,184, la señora Colón Cruzado era la otorgante y que el propósito de la declaración jurada era para una Petición de Declaratoria de Herederos.

20. La señora Colón Cruzado no firmó el Juramento, autenticado por el licenciado R[á]dinson Caraballo, mediante el affidávit número 4,184 del 18 de diciembre de 2013, incluido en la Petición de Declaratoria de Herederos Número KJV2013-2628.

21. Durante la primera mitad del año 2014, la señora Colón Cruzado reiteró al licenciado R[á]dinson Caraballo, personalmente y mediante terceros, su solicitud de que le devolviera sus expedientes y su dinero.

22. En septiembre de 201[4], la señora Colón Cruzado fue personalmente a la oficina del [l]icenciado R[á]dinson Caraballo en compañía de su amigo, el Sr. Carlos Escobar, y reiteró su solicitud de entrega de expediente.

23. El 30 de septiembre de 2014, la señora Colón Cruzado remitió una comunicación al licenciado R[á]dinson Caraballo en la que autorizaba al Sr. José A. Ocasio Robles a recoger todos sus expedientes legales.

24. El 10 de octubre de 2014, el Sr. Edgardo Vélez Mateo recibió de manos del licenciado R[á]dinson Caraballo los expedientes de los casos que trabajó para la señora Colón Cruzado.

25. El 5 de agosto de 2015, la señora Colón Cruzado presentó la *Queja* AB-2015-287.

26. El 10 de junio de 2016, el Tribunal Supremo refirió el expediente de la *Queja* Núm. AB-2015-287 a la consideración de la Oficina de Inspección de Notarías (ODIN).

27. El 23 de agosto de 2016, la ODIN, por conducto de su director, Lcdo. Manuel E. Ávila De Jesús, presentó su *Informe de la Queja Núm. AB-2015-287*. En este se concluyó que, aunque observaron que la firma en la Declaración Jurada no coincidía con la firma de la promovente en otros documentos anejados a la misma, en esa etapa del procedimiento disciplinario no se estableció mediante el estándar de prueba aplicable la alegada falsificación de la firma en la Declaración Jurada. Por lo tanto, se refirió nuevamente la *Queja* a la atención de la Oficina del Procurador General para su evaluación complementaria.

28. El 10 de febrero de 2017, la Oficina del Procurador General presentó su *Informe para la Querella Núm. AB-2015-[287]*, en el cual se incluyó una exposición fáctica de la controversia y se presentó el resultado de la investigación adicional realizada por la Oficina del Procurador General.

29. En su *Informe*, el Procurador General incluyó el resultado de la solicitud de servicios de peritaje del Instituto de Ciencias Forenses, el cual concluyó que [la] señora Colón Cruzado, no firmó la declaración jurada en controversia, la cual reiteramos fue autenticada por el licenciado R[á]dinson Caraballo con el número de testimonio 4,184.

30. El 23 de junio de 2017, el Tribunal Supremo ordenó a la Oficina del Procurador General la presentación de la *Querella*.

31. El 23 de agosto de 2017, la Oficina del Procurador General presentó la Querella CP-2017-19 contra el licenciado R[á]dinson Caraballo.

32. El 30 de marzo de 2022, el querellado presentó su Contestación a la Querella e incluyó junto a [é]sta copia de tres giros postales por la cantidad de dos mil quinientos dólares ($2,500.00) enviados por correo certificado a la Sra. Colón Cruzado. (Corchetes suplidos y énfasis en el original).

Luego de examinar la conducta del licenciado Rádinson Caraballo, a la luz de la normativa aplicable, del expediente del caso, así como del *Informe* presentado por el Comisionado Especial, surgen fundamentos suficientes para determinar que el abogado infringió los Cánones 18, 20, 23, 35 y 38 del Código de Ética Profesional, *supra*, así como incumplió con lo dispuesto en los Arts. 2 y 56 de la Ley Notarial, *supra*, y la Regla 67 del Reglamento Notarial, *supra*.

Coincidimos con lo esbozado por el Comisionado Especial en su *Informe* en cuanto a la infracción de los mencionados cánones y el incumplimiento con las referidas disposiciones, por lo que acogemos sus fundamentos en cuanto a cada uno de éstos. Veamos.

En relación con el **Primer Cargo** (infracción al Canon 18), según surge de las estipulaciones presentadas de forma conjunta por las partes, constituye un hecho irrefutable que el licenciado Rádinson Caraballo fue contratado por la promovente para realizar varios trámites legales, entre ellos la petición de declaratoria de herederos, y la demanda sobre daños y perjuicios. Referente a la declaratoria, surge de las estipulaciones de hechos que la

promovente la requirió en agosto de 2012 y no fue hasta el 16 de diciembre de 2013 cuando el abogado presentó la petición en el foro primario. Mientras, en cuanto a la demanda, también surge de las estipulaciones de hechos que ésta fue encomendada en enero de 2013 y no fue hasta diciembre de 2013 cuando el licenciado Rádinson Caraballo comenzó el trámite de la misma. En términos de la función notarial, del expediente surge que el abogado dio fe falsamente de que la promovente firmó la declaración jurada en su presencia, de forma tal que incumplió con la Ley Notarial, *supra*, y el Canon 18.

En cuanto al **Segundo y Tercer Cargo** (infracción a los Cánones 20 y 23), surge de las estipulaciones de hechos presentadas de forma conjunta que en enero de 2013 la promovente entregó un cheque por $2,500 al licenciado Rádinson Caraballo como depósito para el trámite de la demanda de daños y perjuicios. De igual forma, surge del expediente que, en noviembre de 2013, la promovente le solicitó la renuncia al abogado y le pidió la devolución del dinero pagado. No obstante, la promovente reiteró su solicitud en diciembre de 2013 y no fue hasta marzo de 2022 cuando el licenciado Rádinson Caraballo envió la suma adeudada a la promovente, específicamente al momento de contestar la *Querella* en su contra. Por todo lo cual, el abogado infringió los mencionados cánones al retener el dinero pagado por la promovente sin realizar la gestión acordada.

En referencia al **Cuarto Cargo** (infracción al Canon 35), del expediente de la *Querella* surge que, el 18 de diciembre de 2013, el licenciado Rádinson Caraballo autenticó mediante testimonio una declaración jurada en la que indicaba que la promovente había firmado en su presencia. No obstante, como parte del proceso disciplinario, ésta adujo que no había firmado dicha declaración jurada y presentó evidencia de que se encontraba fuera de Puerto Rico para esa fecha. Así pues, la Oficina del Procurador General recurrió a la opinión pericial de un Examinador de Documentos Dudosos del ICF, quien concluyó que la promovente no había firmado la mencionada declaración jurada. Así, el abogado faltó a la verdad y transgredió el deber de sinceridad y honradez que impone el mencionado canon.

En torno al **Quinto Cargo** (incumplimiento con el Art. 2 de la Ley Notarial, *supra*), surge del expediente que el licenciado Rádinson Caraballo, en su función notarial, legitimó el testimonio de autenticidad número 4,184 el 18 de diciembre de 2013 cuando dio fe falsamente de que la promovente firmó dicho documento en su presencia. Al así actuar, el abogado incumplió con lo dispuesto en el mencionado artículo.

Sobre el **Sexto y Séptimo Cargo** (incumplimiento con el Art. 56 de la Ley Notarial, *supra*, y la Regla 67 del Reglamento Notarial, *supra*), surge del expediente que el licenciado Rádinson Caraballo, al autenticar la mencionada declaración jurada, dio fe falsamente de que la promovente

había firmado dicho documento en su presencia y al así hacerlo incumplió con las referidas disposiciones.

Por último, en relación con el **Octavo Cargo** (infracción al Canon 38), surge evidencia clara, robusta y convincente de que el abogado infringió el mencionado canon al autenticar la declaración jurada en controversia y consignar hechos falsos en la misma, al no tramitar de forma diligente las gestiones acordadas con la promovente, retener dinero de ésta por gestiones no realizadas, así como efectuar trámites a nombre de la promovente sin su autorización. De igual manera, coincidimos con lo esbozado por el Comisionado Especial en cuanto a que los actos y omisiones que quedaron probados en este caso constituyen infracciones éticas que inciden sobre el honor y la dignidad de la profesión legal.

En conclusión, quedó demostrado, con prueba clara, robusta y convincente, que el licenciado Rádinson Caraballo actuó en contravención de los Cánones 18, 20, 23, 35 y 38 del Código de Ética Profesional, *supra*, así como incumplió con lo dispuesto en los Arts. 2 y 56 de la Ley Notarial, *supra*, y la Regla 67 del Reglamento Notarial, *supra*, por lo que las determinaciones del Comisionado Especial merecen nuestra entera deferencia. *In re* Meléndez Mulero, *supra*, pág. 554; *In re* Colón Ortiz, *supra*, pág. 461.

IV

En vista de lo anterior, corresponde que determinemos la sanción disciplinaria a imponerle al abogado por su conducta antiética. En este caso ni el Comisionado

Especial ni la Oficina del Procurador General emitieron una recomendación sobre la sanción particular que pudiera imponerse al abogado.

Al momento de fijar la sanción, procede que examinemos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Santiago Rojas, *supra*; *In re* Soto Peña, *supra*, págs. 680-681; *In re* Rivera Justiniano, *supra*, págs. 407-408; *In re* Ocasio Bravo, 209 DPR 1043, 1060-1061 (2022).

En la consideración de la sanción a aplicarse, evaluamos como factores atenuantes lo siguiente: (1) que en el procedimiento disciplinario se estipularon tres declaraciones juradas sobre la buena reputación del licenciado Rádinson Caraballo en la comunidad; (2) a pesar de que al inicio del proceso el abogado presentó una argumentación férrea en su defensa de que no había actuado en forma antiética, eventualmente reconoció -por ejemplo- que debió haber renunciado a la representación legal según solicitado por la promovente; (3) devolvió a la promovente la suma de $2,500 por concepto del depósito que ésta había pagado para el trámite de la demanda de daños y perjuicios,

y (4) demostró aceptación o arrepentimiento sincero por la conducta imputada; en particular, pidió disculpas en los escritos presentados en el proceso disciplinario, así como mediante su alocución en la vista en su fondo.

Por otra parte, contemplamos como factores agravantes lo siguiente: (1) del historial disciplinario del abogado surge que éste fue censurado enérgicamente en una Opinión *Per Curiam* emitida el 23 de julio de 2020 por haber infringido el Canon 18 del Código de Ética Profesional, *supra*; (2) la conducta no es aislada si se toma en cuenta que en el proceso disciplinario previo por el cual fue censurado enérgicamente el 23 de julio de 2020 también se determinó que había infringido el Canon 18 del Código de Ética Profesional, *supra*, y se le apercibió que, de incurrir en conducta impropia en el futuro, podría ser sancionado de forma más severa. Asimismo, allí le advertimos que debía ser más cuidadoso con el ejercicio de la función profesional que desempeña y ceñirse estrictamente a los deberes deontológicos que impone el Código de Ética Profesional, *supra*; (3) medió ánimo de lucro, pues para cada uno de los trámites legales acordados con la promovente se estableció una cantidad específica y pagadera al licenciado Rádinson Caraballo; y (4) su actuación ocasionó perjuicio a la promovente debido a que los trámites acordados se demoraron meses o nunca se completaron.

Luego de ponderar los hechos, las violaciones éticas, la conducta envuelta y la totalidad de las circunstancias,

principalmente el hecho de que el abogado ya había sido censurado enérgicamente en una ocasión anterior y también fue apercibido sobre la imposición de sanciones más severas en caso de incurrir en conducta impropia en el futuro, así como fue advertido de que debía ser más cuidadoso en el ejercicio de la función profesional que desempeña, en virtud de nuestro poder inherente de reglamentar la profesión legal, procede que decretemos la suspensión inmediata e indefinida del licenciado Rádinson Caraballo del ejercicio de la abogacía y la notaría.[17]

V

Por los fundamentos antes expuestos, suspendemos de forma inmediata e indefinida al Lcdo. Sergio Rádinson Caraballo del ejercicio de la abogacía y la notaría.

En consecuencia, se ordena al Alguacil de este Tribunal a incautar la obra notarial que se encuentra bajo la custodia del señor Rádinson Caraballo al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

Asimismo, el señor Rádinson Caraballo deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no

---

[17]   Véase, por ejemplo, *In re* Sánchez Pérez, 210 DPR 235 (2022).

realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de esta Opinión *Per Curiam* y Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal, de solicitarlo en el futuro.

Por otro lado, en virtud de la suspensión inmediata e indefinida de la práctica de la notaría, la fianza que garantiza las funciones notariales del señor Rádinson Caraballo queda automáticamente cancelada.[18] Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Se dictará Sentencia en conformidad.

---

[18] El 5 de junio de 2025, el abogado presentó una *Moción sometiendo fianza notarial*, en la que notifica a este Tribunal que la vigencia de la fianza prestada es desde el 11 de febrero de 2025 al 11 de febrero de 2026.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

|                                        |            | Conducta   |
| Sergio Rádinson Caraballo              | CP-2017-19 | Profesional |
|      (TS-11,666)                       |            |            |

SENTENCIA

En San Juan, Puerto Rico a 30 de junio de 2025.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, suspendemos de forma inmediata e indefinida al Lcdo. Sergio Rádinson Caraballo del ejercicio de la abogacía y la notaría.

En consecuencia, se ordena al Alguacil de este Tribunal a incautar la obra notarial que se encuentra bajo la custodia del señor Rádinson Caraballo al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

Asimismo, el señor Rádinson Caraballo deberá notificar inmediatamente a todos sus clientes sobre su inhabilidad para continuar representándoles. Además, deberá devolver a sus clientes los expedientes de los casos pendientes, así como los honorarios recibidos por trabajos no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier foro judicial y administrativo en los que tenga algún asunto pendiente y acreditar a este Tribunal el cumplimiento con lo anterior, dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* y esta Sentencia. No hacerlo pudiera conllevar que no se le reinstale a la práctica de la profesión legal de solicitarlo en el futuro.

Por otro lado, en virtud de la suspensión inmediata e indefinida de la práctica de la notaría, la fianza que garantiza las funciones notariales del señor Rádinson Caraballo queda automáticamente cancelada. Esta fianza se considerará buen y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese por correo electrónico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Colón Pérez no intervino.


                              Javier O. Sepúlveda Rodríguez
                              Secretario del Tribunal Supremo