EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|--------|--|
| Joaquín Nieves Marrero (TS-8371) | 2026 TSPR 49 <br><br> 218 DPR ___ |

Número del Caso: AB-2023-0135


Fecha: 6 de mayo de 2026


Oficina de Inspección de Notarías:

    Lcdo. Manuel E. Ávila De Jesús
    Director


Representante legal del promovido:

    Por Derecho Propio


Materia: Conducta Profesional – Suspensión inmediata del ejercicio de la notaría por el término de tres (3) meses.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| *In re*:<br><br>Joaquín Nieves Marrero<br>(TS-8371) | AB-2023-135 | Conducta Profesional |

*PER CURIAM*

En San Juan, Puerto Rico, a 6 de mayo de 2026.

Una vez más nos vemos obligados a ejercer nuestra facultad disciplinaria en relación a un miembro de la profesión legal. En esta ocasión, procede la suspensión inmediata del Lcdo. Joaquín Nieves Marrero (licenciado Nieves Marrero o notario) del ejercicio de la notaría por un término de tres (3) meses por infringir los Arts. 2 y 14 de la Ley Notarial de Puerto Rico (Ley Notarial), 4 LPRA secs. 2002 y 2032, así como los postulados esbozados en los Cánones 12, 18 y 35 del Código de Ética Profesional, 4 LPRA Ap. IX.[1]

---

[1] El Código de Ética Profesional, 4 LPRA Ap. IX, fue derogado por las Reglas de Conducta Profesional de Puerto Rico, según aprobadas el 17 de junio de 2025 mediante la *Resolución* ER-2025-02 y cuya vigencia comenzó el 1 de enero de 2026. Sin embargo, debido a que los hechos relacionados a la conducta del Lcdo. Joaquín Nieves Marrero (licenciado Nieves Marrero o notario) ocurrieron durante la vigencia del Código de Ética Profesional, *supra*, aplicaremos dicho cuerpo reglamentario.

I

El licenciado Nieves Marrero fue admitido al ejercicio de la abogacía el 13 de agosto de 1986 y prestó juramento como notario el 2 de septiembre del mismo año.

## A. Presentación de la *Queja* AB-2023-135

El 30 de mayo de 2023, el Sr. Radamés Ortiz Peña (promovente) presentó una *Queja* en contra del notario. Según adujo, el Sr. Ventura Rivera Rodríguez (señor Rivera Rodríguez) y la Sra. Luz M. Martínez Hernández (señora Martínez Hernández) adquirieron mediante compra una parcela en la Comunidad Santana del Barrio Ceiba Norte en Juncos, Puerto Rico. En particular, el inmueble consta inscrito como la Finca Núm. 6173 en el Registro Inmobiliario Digital, Sección Segunda de Caguas (Registro).

Más adelante, mediante la Escritura Núm. 25 sobre *Acta de Edificación* (Escritura Núm. 25), autorizada por el licenciado Nieves Marrero el 15 de noviembre de 2007, el señor Rivera Rodríguez y la señora Martínez Hernández constituyeron un derecho sobre la edificación construida en la mencionada propiedad.[2]

De acuerdo con lo expuesto por el promovente, unos meses más tarde, el señor Rivera Rodríguez -sin la comparecencia de su esposa- cedió a su hija, la Sra. Brenda Marie Rivera Farrell (señora Rivera Farrell), su participación sobre la Finca Núm. 6173 mediante la Escritura Núm. 14 sobre *Donación*

---

[2] La referida estructura fue valorada en $33,000. Véase *Escritura Núm. 25 sobre Acta de Edificación*, Anejo IV del Informe de la Oficina de Inspección de Notarías (ODIN).

*y Aceptación* (Escritura Núm. 14), la cual fue autorizada por el licenciado Nieves Marrero el 25 de julio de 2008. En esa misma fecha, la señora Martínez Hernández -sin la comparecencia de su esposo- vendió su participación sobre la Finca Núm. 6173 a la señora Rivera Farrell por $40,000, según fue instrumentado en la Escritura Núm. 15 sobre *Compraventa constituyendo hipoteca directa* (Escritura Núm. 15), la cual fue autorizada por el notario. Específicamente, la señora Rivera Farrell se comprometió a pagar el precio de venta mediante un solo pago, en un término de quince (15) años, con fecha de vencimiento del 25 de julio de 2023. Ambas escrituras fueron presentadas ante el Registro el 21 de abril de 2015 para su calificación e inscripción.

El 31 de agosto de 2017, el Registrador notificó la Escritura Núm. 15 y expuso las siguientes faltas:

1. El documento presentado no expresa a favor de quién se constituye la hipoteca que se pretende inscribir.

2. El documento presentado no expresa la suma, valor o tasación del inmueble para efectos de subasta en caso de ejecución de hipoteca.

3. Falta acompañar comprobante de inscripción por la cantidad de $110.00 para completar los derechos arancelarios.

En atención a esto, el 26 de diciembre de 2017, el licenciado Nieves Marrero autorizó (sin la comparecencia de las partes otorgantes en la Escritura Núm. 15) la Escritura Núm. 12 sobre *Acta de Subsanación* (Escritura Núm. 12), mediante la cual aclaró que la hipoteca se constituyó a favor de la señora Martínez Hernández por el

valor del objeto de la compraventa ($40,000). El 24 de enero de 2018, el notario presentó el instrumento público ante el Registro junto a un comprobante de inscripción por $110.

En su *Queja*, el promovente añadió que, según surgía de una certificación emitida el 20 de septiembre de 2021 por el Centro de Recaudaciones de Ingresos Municipales (CRIM), a esa fecha la Finca Núm. 6173 aún constaba registrada a nombre de la señora Martínez Hernández. También expuso que en la Escritura Núm. 15 el licenciado Nieves Marrero tampoco incluyó la advertencia sobre la necesidad de transferir la propiedad a nombre de la señora Rivera Farrell en el CRIM.

Asimismo, el promovente indicó que el 7 de mayo de 2022 el notario otorgó la Escritura Núm. 22 sobre *Compraventa* (Escritura Núm. 22), mediante la cual la señora Rivera Farrell vendió la Finca Núm. 6173 al Sr. Luis Rivera Hernández (señor Rivera Hernández) y la Sra. Melissa Acosta Correa (en conjunto, esposos Rivera-Acosta), casados entre sí, por la cantidad de $90,000. En cuanto a la referida Escritura Núm. 22, señaló que el licenciado Nieves Marrero hizo constar que la Finca Núm. 6173: (1) estaba libre de cargas y gravámenes (esto a pesar de que el inmueble estaba gravado por la hipoteca constituida mediante la Escritura Núm. 15 autorizada el 25 de julio de 2008 y que el cumplimiento de la obligación aún no había vencido); (2) estaba inscrita en el Registro de la Propiedad, Sección de San Germán (cuando su inscripción correcta era Juncos, Sección Segunda de Caguas), y (3) tenía el número de catastro incorrecto.

Finalmente, el promovente indicó que el notario falló a la fe pública registral al asegurar que la propiedad estaba libre de cargas y gravámenes, lo cual perjudicó el interés hipotecario de la señora Martínez Hernández. Asimismo, indicó que incurrió en engaño a los esposos Rivera-Acosta, quienes adquirieron el inmueble bajo la premisa de que estaba libre de cargas y gravámenes. Al respecto, menciona que tal actuación del notario es contraria a la Ley Notarial. En vista de lo anterior, el promovente solicitó una compensación por los honorarios legales y los gastos derivados de la presentación de la *Queja*.

Como parte del trámite de la *Queja*, el 13 de junio de 2023 se le concedió al licenciado Nieves Marrero un término de diez (10) días, contado a partir de la notificación de la comunicación, para que contestara los planteamientos en su contra. Así pues, el 21 de junio de 2023, el notario solicitó una prórroga para presentar su contestación a la *Queja*. Ante esto, el 26 de junio de 2023 se le concedió un término adicional de quince (15) días para ello.

## B. Contestación a la *Queja*

El 17 de julio de 2023, el licenciado Nieves Marrero presentó su contestación a la *Queja* mediante un escrito titulado *Moción informativa*. En síntesis, expresó que el promovente no demostró tener un interés legítimo sobre los asuntos relativos a la *Queja* ni demostró haber sufrido perjuicio real por su proceder en su función como notario.

Por otra parte, admitió que, mediante la Escritura Núm. 14, el señor Rivera Rodríguez donó (sin que su cónyuge compareciera como parte otorgante) a la señora Rivera Farrell (su hija) su participación del 50% en la Finca Núm. 6173. De igual forma, aceptó que, por medio de la Escritura Núm. 15, la señora Martínez Hernández vendió (también sin la comparecencia de su cónyuge) su participación del 50% en la Finca Núm. 6173 a favor de la señora Rivera Farrell, convirtiéndose esta última en la adquirente de la totalidad del inmueble.

En cuanto al tema de la no comparecencia de los cónyuges en los mencionados dos (2) instrumentos públicos que autorizó como notario, expuso que dicha controversia se había tornado académica debido a que la señora Rivera Farrell se convirtió en la única propietaria y titular de la Finca Núm. 6173, lo que le permitía gozar y disponer del inmueble. En vista de esto, manifestó que el negocio jurídico consignado en la Escritura Núm. 22 (la cual también autorizó como notario) tampoco quedó afectado.

En torno a las advertencias omitidas en las Escrituras Núm. 14 y Núm. 15 referentes a la gananciaidad o comunidad de bienes de la Finca Núm. 6173, indicó que el modo en que se adquirió la propiedad en nada afectó el negocio jurídico instrumentado y, en consecuencia, no afectó la titularidad ni el dominio del inmueble.

Con relación a la información incluida en la Escritura Núm. 22 referente a que la Finca Núm. 6173 constaba inscrita en la Sección de San Germán cuando lo correcto es que está

inscrita en la Sección de Caguas, expresó que esto se debió a un "mero error clerical", por lo que era "un señalamiento que no amerita reaccionar".[3] De igual forma, en cuanto al número de catastro incorrecto incluido en la Escritura Núm. 22, expuso que el adquirente y actual titular del inmueble (señor Rivera Hernández) ya consta como dueño en el CRIM.

Finalmente, reconoció que en la Escritura Núm. 22 no incluyó la referencia sobre la hipoteca por $40,000 que gravaba la Finca Núm. 6173. Para ello, sostuvo que, como garantía, no medió pagaré alguno; se pactó una fecha de vencimiento para julio de 2023, y ninguna persona ha procurado el cobro de la obligación que surge de la mencionada hipoteca.

Por lo anterior, el licenciado Nieves Marrero expuso que el promovente "no es acreedor de [u]n interés legítimo en sus reclamos".[4] Consecuentemente, solicitó que se proveyera *No Ha Lugar* a la *Queja*.

## C. Escrito adicional del promovente

El 17 de julio de 2023, el promovente presentó una *Contestación a la moción informativa del promovido […]*. En síntesis, señaló que el 4 de octubre de 2012 la señora Martínez Hernández otorgó un testamento mediante el cual se le instituyó como heredero y también se le designó como

---

[3] *Moción informativa* presentada el 17 de julio de 2023 por el licenciado Nieves Marrero, pág. 3.

[4] Íd., pág. 4.

albacea testamentario,[5] por lo cual era parte con interés en los asuntos relativos a la *Queja*.

Asimismo, indicó que la doctrina de academicidad no aplica a las actuaciones del licenciado Nieves Marrero en sus funciones como notario. En particular, manifestó que el notario dio fe de datos incorrectos al incluir en la Escritura Núm. 22 que la Finca Núm. 6173 estaba inscrita en la Sección de San Germán cuando el dato correcto es que pertenece a la Sección de Caguas, así como que el inmueble se encontraba libre de cargas y gravámenes. También expresó que, de acuerdo con una *Certificación de propiedad inmueble* expedida el 28 de febrero de 2023, la Escritura Núm. 22 aún no constaba inscrita en el Registro, por lo que solicitó a este Tribunal resolver el estatus legal de dicho instrumento público.

En cuanto a las Escrituras Núm. 14 y Núm. 15, manifestó que el licenciado Nieves Marrero no las presentó ante el Registro hasta después que se presentara el caso Civil Núm. EAC2017-0350, en el cual se solicitó el cobro de la obligación que surgía de la hipoteca instrumentada en la Escritura Núm. 15. Además, indicó que dicha demanda fue presentada por la señora Martínez Hernández previo a su deceso y luego fue enmendada para integrar a sus herederos al pleito.

---

[5]   Dicho testamento fue instrumentado mediante la Escritura Núm. 74 por el Lcdo. José D. Rivera Ortiz.

Por último, reafirmó su petición de recobrar los honorarios legales y gastos relacionados con el trámite del caso Civil Núm. EAC2017-0350[6] y la presente *Queja*.

**D. Trámites procesales posteriores**

El 4 de agosto de 2023, este Tribunal refirió el asunto a la Oficina de Inspección de Notarías (ODIN) para que realizara la investigación correspondiente y presentara su Informe.

Más adelante, el 11 de abril de 2024, el Lcdo. Manuel E. Ávila De Jesús (Director de la ODIN) presentó una *Moción solicitando paralización del proceso disciplinario*. En síntesis, expuso que, como parte del proceso de investigación, la ODIN confirmó que existía un litigio relacionado con los hechos expuestos en la *Queja*.[7] Ante esto, la ODIN solicitó que: (1) se decretara la paralización del proceso disciplinario hasta tanto se resuelvan los trámites referentes al proceso legal en el caso Civil Núm. EAC2017-0350, y (2) se ordenara a las partes informar periódicamente al Tribunal y a la ODIN sobre el estatus del mencionado pleito, así como la determinación final que emitiera el foro de primera instancia o el foro revisor.

Así las cosas, el 26 de abril de 2024, emitimos una *Resolución* mediante la cual decretamos la paralización del

---

[6]    *Luz María Martínez Hernández v. Brenda Marie Rivera Farrell*, Caso Civil Núm. EAC2017-0350, sobre liquidación de comunidad de bienes y usufructo viudal; nulidad de escritura; reivindicación de bienes, y daños y perjuicios.

[7]    *Íd.*

proceso disciplinario y ordenamos a las partes mantener informados a este Tribunal y a la ODIN sobre el estado del caso Civil Núm. EAC2017-0350, así como la determinación final que emitiera el foro de primera instancia o el foro revisor.[8]

Posteriormente, el 31 de octubre de 2025, emitimos una *Resolución* en la que, atendida una *Moción informativa* presentada por el promovente, dejamos sin efecto la paralización del proceso disciplinario y concedimos un término de treinta (30) días a la ODIN para informar sobre el asunto en cuestión.[9]

Así pues, el 3 de diciembre de 2025, el Director de la ODIN presentó su Informe.  En éste, luego de esbozar el tracto procesal y el derecho aplicable al caso, discutió como agravante que de las expresiones del notario no surgía justificación concreta para explicar su desempeño profesional en el manejo de los negocios jurídicos instrumentados, así como tampoco asumía responsabilidad de ello.  Mientras, como atenuante, señaló que éste es el primer proceso disciplinario en contra del licenciado Nieves Marrero en su función como notario.

Ante esto, el Director de la ODIN nos recomendó lo siguiente: (1) decretar la suspensión por el término de tres (3) meses por infringir los Arts. 2 y 14 de la Ley Notarial, *supra*, así como los postulados esbozados en los Cánones 12,

---

[8]    El archivo en autos de copia de la *Resolución* fue el 1 de mayo de 2024.

[9]    El archivo en autos de copia de la *Resolución* fue el 4 de noviembre de 2025.

18 y 35 del Código de Ética Profesional, *supra*; (2) ordenar al licenciado Nieves Marrero a contratar un notario para encaminar el proceso de rectificación y ratificación para atender las faltas señaladas en la Escritura Núm. 22,[10] de forma tal que se pueda presentar el instrumento sin errores ante el Registro para su calificación e inscripción, y (3) apercibir al notario de su deber de dar fiel cumplimiento a la Ley Notarial, el Reglamento Notarial, las Reglas de Conducta Profesional, así como las leyes que inciden en el ejercicio del notariado.

Mediante *Resolución* del 16 de enero de 2026, concedimos a las partes un término de veinte (20) días, contado a partir de la notificación de la *Resolución*, para que se expresaran sobre el Informe presentado por la ODIN. Allí le advertimos que, de no comparecer en el término provisto, se entendería que se allanaban a las recomendaciones formuladas en dicho Informe.[11]

El 9 de febrero de 2026, el licenciado Nieves Marrero presentó una moción en respuesta al Informe de la ODIN. En éste, expresó que aceptaba y se allanaba a lo dispuesto en el Informe de la ODIN, con excepción de las recomendaciones de imposición de sanciones. Al respecto, indicó lo siguiente:

> 1. En citación del Apartado IV-Perfil del Promovido, en efecto el suscribiente fue admitido al ejercicio de la notaría el 2 de septiembre de 1986 y su obra protocolar está inspeccionada y aprobada hasta el año

---

[10] En particular, los datos registrales y del catastro, así como la ausencia de datos relacionados a la hipoteca que gravaba el inmueble al momento de su venta.

[11] El archivo en autos de copia de la *Resolución* fue el 21 de enero de 2026.

natural 2022; [así como] el Registro de Testimonios se encuentra inspeccionado y aprobado hasta el Asiento Número 16,489.

De manera pues -y así no consta lo contrario en el Informe- que jamás ni nunca hemos sido notificado de alguna queja o querella, tanto en nuestra función como abogado ni como notario. De manera pues, que podemos aseverar con toda certeza que **en los treinta y nueve años que llevamos en esta honrosa profesión -de práctica activa- nunca hemos sido objeto de alguna querella en nuestro desempeño profesional y habiendo servido como Abogado voluntario con el Programa PRO-BONO del Colegio de Abogados de Puerto Rico, durante casi 40 años**.

En su virtud, el Notario que suscribe, a pesar de reconocer y aceptar los errores y omisiones señaladas, las mismas responden a unos errores y omisiones totalmente **aisladas y no representativas de nuestra práctica habitual, ni menos de un patrón repetitivo de actuaciones antiéticas[,] por lo cual expresamos nuestro pesar y constricción profesional.**

2. Como corolario a lo anterior, en las faltas reconocidas no medió en lo absoluto actuaciones fraudulentas y sin ánimo de lucro; aseguramos que los honorarios y gastos de aranceles fueron cobrad[o]s en pleno cumplimiento con las tarifas autorizadas por nuestras normas estatutarias prevalecientes.

3. Las faltas y errores reconocid[o]s fueron resuelt[o]s a satisfacción y de conformidad de la parte Promovente, según del apartado octavo (8) del acápite **IV-Perfil del Promovido**. Veamos:

En el caso presentado por el Promovente, **Luz María Martínez v. Brenda Marie Rivera Farrell**, [Civil Núm. EAC2017-0350], sobre Liquidación de Comunidad de Bienes y Usufructo Viudal, Nulidad de Escritura, en la que se solicita la nulidad de [las Escrituras Núm. 14 y Núm. 15] (ambas escrituras objeto del procedimiento disciplinario), fueron resueltas por Sentencia por Desistimiento. (**Véase Anejo XVII del Informe**).

Del mismo modo, en el caso presentado por el Promovente, **Luz María Martínez v. Brenda Marie Rivera Farrell**, [Civil Núm. JU2024CV00041],

sobre el cobro de la suma de $40,000.00, se lograron unos acuerdos extrajudiciales con la demandada, en la que efectivamente ésta (la demandada) satisfizo la cantidad reclamada. (**Véanse Anejos XVII, XVIII, XIX y XXI del Informe**). En este último anejo (XXI), el Promovente presentó a ODIN, copia del cheque como evidencia del pago de los $40,000.00 reclamados y satisfechos.

4. Como puede observar esta Honorable Alta Curia[,] las conductas imputadas que dieron lugar a la Queja del [s]eñor Promovente fueron corregidas, quedando éste -como albacea testamentario relacionado al [i]nmueble objeto de la misma- debidamente resarcido, subsanándose así los perjuicios en su contra.

Nos comprometemos y obligamos, tal y como lo recomienda el [s]eñor Director de ODIN, a "encaminar el proceso de rectificación y ratificación para atender las faltas" ante el [Registro] y a "velar fiel y estrictamente el cumplimiento de la Ley Notarial, el Reglamento Notarial, las Reglas de Conducta Profesional" vigentes, así como las leyes que inciden en el ejercicio del notariado.[12]

Por lo anterior, el notario solicitó que declaremos *Ha Lugar* su moción y no acojamos la recomendación del Director de la ODIN sobre la imposición de una suspensión por un término de tres (3) meses de la notaría.

A la luz de los hechos expuestos, procedemos a esbozar el derecho aplicable previo a disponer del asunto ante nuestra consideración.

II

**A. Procedimiento disciplinario en general**

Como parte de nuestro poder inherente para reglamentar la profesión legal en Puerto Rico, venimos obligados a

---

[12] *Moción expresándonos sobre el Informe presentado de la Oficina de Inspección de Notaría[s]*, págs. 2-3.

asegurarnos de que los miembros admitidos al ejercicio de la abogacía realicen sus funciones de manera responsable, competente y diligente. *In re* Barreto Cintrón, 2026 TSPR 17, 217 DPR ___ (2026); *In re* Falcón Morales, 2025 TSPR 104, 216 DPR ___ (2025); *In re* Rádinson Caraballo, 2025 TSPR 71, 216 DPR ___ (2025); *In re* Soto Peña, 213 DPR 663, 675 (2024); *In re* Rivera Justiniano, 212 DPR 385, 400-401 (2023).

El Código de Ética Profesional[13] establece las reglas mínimas de conducta que regulan la práctica de la abogacía en nuestra jurisdicción con el fin de promover los más altos principios éticos en beneficio del cliente, de la profesión legal, de la sociedad y de las instituciones de justicia. *In re* Rádinson Caraballo, *supra*; *In re* Santiago Ortiz, 2024 TSPR 127, 215 DPR ___ (2024); *In re* Soto Peña, *supra*; *In re* González Díaz, 201 DPR 145, 150 (2018).

En múltiples ocasiones, este Tribunal ha indicado que el propósito del procedimiento disciplinario no es castigar al abogado, sino proteger al público y a la profesión mediante una investigación del comportamiento ético del abogado y de sus condiciones morales para determinar si puede continuar ejerciendo la abogacía. *In re* Vázquez Garced, 2026 TSPR 27, 217 DPR ___ (2026); *In re* Huertas Soto, 195 DPR 234, 240 (2016); *In re* García Aguirre, 175 DPR 433, 441 (2009).

Por razón de que en el procedimiento disciplinario puede verse afectado el título profesional del letrado y, con ello,

---

[13]   Véase nota al calce número 1 de esta Opinión *Per Curiam*.

el derecho fundamental a ganarse el sustento, hemos expresado que el estándar de prueba requerido para imponer sanciones disciplinarias a un integrante de la profesión legal es mayor al que se requiere en los procesos civiles. *In re* Santos Negrón, 212 DPR 965, 973-974 (2023). Así pues, hemos resuelto que "la acción disciplinaria debe estar basada en prueba clara, robusta y convincente, no afectada por reglas de exclusión ni a base de conjeturas". Íd., pág. 974.

**B. Ejercicio de la función notarial y la ética profesional**

Este Foro ha expresado que el notario está sujeto a los preceptos éticos que regulan la profesión legal. Así pues, cuando realiza su función notarial, tiene que cumplir las disposiciones de la Ley Notarial, del Reglamento Notarial y del Código de Ética Profesional (hoy las Reglas de Conducta Profesional de Puerto Rico). *In re* González Pérez, 208 DPR 632, 645 (2022). Al respecto, señalamos que "[l]a inobservancia con estos postulados, no solamente expone a las personas que ejercen la función notarial a sanciones severas, sino que, además, causan inestabilidad en los negocios jurídicos del país". Íd.

**C. Incumplimiento con la Ley Notarial**

**1. Artículo 2**

El Art. 2 de la Ley Notarial, *supra*, consagra el principio de la fe pública notarial y los deberes que constituyen los pilares fundamentales que todo notario debe cumplir. *In re* Rádinson Caraballo, *supra*; *In re* González Foster, 2025 TSPR 27, 215 DPR ___ (2025). En particular, dicho artículo establece lo siguiente:

El notario es el profesional del Derecho que ejerce una función pública, autorizado para dar fe y autenticidad conforme a las leyes de los negocios jurídicos y demás actos y hechos extrajudiciales que ante él se realicen, sin perjuicio de lo dispuesto en las leyes especiales. Es su función recibir e interpretar la voluntad de las partes, dándole forma legal, redactar las escrituras y documentos notariales a tal fin y conferirle[s] autoridad a los mismos. La fe pública al notario es plena respecto a los hechos que, en el ejercicio de su función, personalmente ejecute o compruebe y también respecto a la forma, lugar, día y hora del otorgamiento. (Corchetes en el original).

La mencionada disposición instituye el principio cardinal de la fe pública notarial y en virtud de éste el notario viene llamado a ejercer su ministerio con esmero, diligencia y estricto celo profesional. *In re* Rádinson Caraballo, *supra*; *In re* Román Jiménez, 213 DPR 467, 474 (2024); *In re* Vázquez Margenat, 204 DPR 968, 977 (2020).

Como vemos, la fe pública notarial va unida al ejercicio pleno del funcionario notarial en relación a lo que presencie. *In re* González Pérez*, supra*, págs. 645-646. Por tal razón, un documento notarial endosado por la fe de un notario se presume que cumple con los requisitos de ley. Íd., pág. 646. Por consiguiente, esa dación de fe brinda la confianza de que los hechos jurídicos y las circunstancias que acredita el notario fueron percibidos y comprobados con sus sentidos o ejecutados por éste. Íd.; *In re* Arocho Cruz *et al.*, 198 DPR 360, 366 (2017).

En ese sentido, la fe pública notarial impone al notario el deber de ser diligente en su gestión, así como asegurarse de cumplir con todas las solemnidades de la Ley Notarial al autorizar los instrumentos públicos. *In re* Vázquez Pardo,

185 DPR 1031, 1042 (2012). Por tal razón, hemos expresado que la fe pública notarial es de tan alta importancia que no es necesario que el notario falte a la verdad intencionalmente para que incurra en una violación a ella. *In re* Vázquez Pardo, *supra*, pág. 1041.

### 2. Artículo 14

En lo pertinente, el Art. 14 de la Ley Notarial, *supra*, dispone que "[l]os notarios redactarán las escrituras públicas de acuerdo con la voluntad de los otorgantes y adaptándola[s] a las formalidades jurídicas necesarias para su eficacia".

Al respecto, este Tribunal ha indicado que el notario brindará las informaciones, aclaraciones y advertencias necesarias para que así los otorgantes comprendan el sentido, los efectos y las consecuencias del negocio jurídico, y se den cuenta de los riesgos que corren al celebrarlo. *In re* Vélez Torres, 209 DPR 848, 865 (2022); *In re* Santiago Maldonado, 206 DPR 1029, 1042 (2021).

### D. Incumplimiento con el Código de Ética Profesional

#### 1. Canon 12 (Puntualidad y tramitación de las causas)

En lo pertinente, el Canon 12 del Código de Ética Profesional, *supra*, establece que:

> Es deber del abogado hacia el tribunal, sus compañeros, las partes y testigos el ser puntual en su asistencia y conciso y exacto en el trámite y presentación de las causas. Ello implica el desplegar todas las diligencias necesarias para asegurar que no se causen indebidas dilaciones en su tramitación y solución. […]

Como vemos, el mencionado canon le impone a todo abogado el deber de ser conciso y exacto en el trámite y presentación de las causas. *In re* Ramos Bahamundi, 2025 TSPR 43, 215 DPR ___ (2025); *In re* Soto Peña, *supra*, pág. 676.

En conformidad al referido deber ético, este Foro ha manifestado que el abogado deberá tramitar las causas encomendadas de una forma responsable, puntual y diligente. *In re* Soto Peña, *supra*, pág. 677; *In re* Maldonado Nieves, 213 DPR 119, 127 (2023); *In re* Cardona Estelritz, 212 DPR 649, 664 (2023); *In re* Sánchez Pérez, 210 DPR 235, 262 (2022); *In re* Meléndez Mulero, 208 DPR 541, 551 (2022). Ante esto, el abogado tiene la obligación de efectuar todas las diligencias necesarias para asegurarse de no causar demoras indebidas en el trámite y resolución de las causas que se le encomienden. *In re* Santiago Ortiz, *supra*; *In re* Soto Peña, *supra*, pág. 677; *In re* Meléndez Mulero, *supra*, pág. 551; *In re* Lugo Quiñones I, 206 DPR 1, 10 (2021).

También hemos expresado que el deber de diligencia es una obligación básica y elemental del abogado hacia su cliente. *In re* Soto Peña, *supra*, pág. 677; *In re* Rodríguez Lugo, 201 DPR 729, 737 (2019). Por tal razón, las actuaciones y omisiones que pongan en riesgo la causa de acción de los clientes configuran una violación patente del Canon 12. *In re* Ayala Oquendo I, 2025 TSPR 9, 215 DPR ___ (2025); *In re* Soto Peña, *supra*, pág. 677; *In re* Meléndez Mulero, *supra*, pág. 551; *In re* López Santiago, 203 DPR 1015, 1026-1027 (2020). Este es un deber ineludible que los

abogados deben cumplir con gran recelo. *In re* Maldonado Maldonado, 197 DPR 802, 812 (2017).

**2. Canon 18 (Competencia del abogado y consejo al cliente)**

Por otra parte, el Canon 18 del Código de Ética Profesional, *supra*, expone lo siguiente:

Será impropio de un abogado asumir una representación profesional cuando está consciente de que no puede rendir una labor idónea competente y que no puede prepararse adecuadamente sin que ello apareje gastos o demoras irrazonables a su cliente o a la administración de la justicia.

Es deber del abogado defender los intereses del cliente diligentemente, desplegando en cada caso su más profundo saber y habilidad y actuando en aquella forma que la profesión jurídica en general estima adecuada y responsable.

Este deber de desempeñarse en forma capaz y diligente no significa que el abogado puede realizar cualquier acto que sea conveniente con el propósito de salir triunfante en las causas del cliente. La misión del abogado no le permite que en defensa de un cliente viole las leyes del país o cometa algún engaño. Por consiguiente, al sostener las causas del cliente, debe actuar dentro de los límites de la ley, teniendo en cuenta no sólo la letra de ésta, sino el espíritu y los propósitos que la informan. No debe tampoco ceder en el cumplimiento de su deber por temor a perder el favor judicial ni la estimación popular. No obstante, un abogado puede asumir cualquier representación profesional si se prepara adecuadamente para ello y no impone gastos ni demoras irrazonables a su cliente y a la administración de la justicia.

Como parte de ese deber ético, se exige al abogado rendir una labor idónea, competente, diligente, oportuna y sin dilaciones, pues actuar de forma contraria implica desplegar una conducta negligente, indiferente y displicente en los asuntos encomendados. *In re* Rádinson Caraballo, *supra*.

En relación con la función notarial, este Foro ha manifestado que los notarios públicos demuestran su

conocimiento jurídico mediante una ejecución correcta de sus funciones notariales. *In re* Vélez Torres, *supra*, pág. 868; *In re* Soto Aguilú, 208 DPR 484, 501 (2021).

Además, hemos planteado que el notario, como custodio de la fe pública notarial, tiene el deber de conocer el estado registral de la propiedad sobre la cual se otorga una escritura pública para así asegurarse de que autoriza un documento eficaz y que obtuvo el consentimiento informado de los otorgantes. *In re* Vélez Torres, *supra*, pág. 868; *In re* Palmer Ramos, 195 DPR 245, 257 (2016). Asimismo, hemos resuelto que un notario viola el Canon 18 cuando infringe las disposiciones de la Ley Notarial debido a que "incurre en una práctica notarial indeseable". *In re* Ayala Oquendo, 185 DPR 572, 580 (2012).

Este Tribunal también ha expresado que el incumplimiento con el deber de diligencia que exige el Canon 18 se relaciona con el deber de ilustrar a las partes con explicaciones, aclaraciones y advertencias necesarias, aplicando así su conocimiento sobre el derecho vigente y, a su vez, verificando la legalidad y validez de los instrumentos públicos. *In re* Vélez Torres, *supra*, págs. 868-869; *In re* Sánchez Reyes, 204 DPR 548, 567 (2020).

En ese contexto, hemos señalado que ese deber de diligencia consagrado en el Canon 18 resulta "del todo incompatible con la desidia, despreocupación y displicencia" en la que incurra un abogado al atender los asuntos encomendados por su cliente. *In re* Vélez Torres, *supra*, pág. 869; *In re* Miranda Daleccio, 193 DPR

753, 762 (2015). Ante esto, cuando un abogado acepta la encomienda de representar a una persona y no ejecuta sus funciones de forma adecuada y responsable, infringe el Canon 18 del Código de Ética Profesional, *supra*. *In re* Rádinson Caraballo, *supra*.

### 3. Canon 35 (Sinceridad y honradez)

En lo pertinente, el Canon 35 del Código de Ética Profesional, *supra*, indica que "[l]a conducta de cualquier miembro de la profesión legal ante los tribunales, para con sus representados y en las relaciones con sus compañeros debe ser sincera y honrada". De igual manera expone que "[e]l abogado debe ajustarse a la sinceridad de los hechos al examinar los testigos, al redactar affidavits u otros documentos, y al presentar causas". Íd.

Este Foro ha expresado que todo jurista tiene la obligación ineludible de asegurarse que los datos consignados en cada documento que firma o redacta son veraces. *In re* González Pérez, *supra*, págs. 649-650; *In re* Ortiz Sánchez, 201 DPR 765, 781 (2019). Así pues, el notario que asevere cualquier hecho en un instrumento público que no concuerde con la verdad, incumple con el mencionado canon, ello independientemente de si hubo la intención de faltar a la verdad. *In re* Román Jiménez, *supra*, pág. 477; *In re* Sánchez Reyes, *supra*, pág. 573. Al respecto, hemos manifestado que ello menoscaba la fe pública notarial, debilita la integridad de la profesión legal, y al así actuar el notario infringe el deber de sinceridad y honradez

consignado en el Canon 35.    *In re* Pérez Pérez II, 2026 TSPR 3, 217 DPR ___ (2026).

III

## A. Parte promovente en el proceso disciplinario

Como asunto de umbral, corresponde que evaluemos el señalamiento de falta de legitimación activa que hiciera el licenciado Nieves Marrero en relación a la presentación de la *Queja* por parte del promovente.

Este Tribunal ha expresado, en el contexto de los procesos disciplinarios, que el concepto "parte promovente" se refiere a "aquella persona que ha impulsado la acción disciplinaria y que, a su vez, tiene conocimiento personal y legitimación activa con relación a la queja". *In re* Sánchez Reyes, supra, pág. 575; *In re* MMT, MITA y LST, 191 DPR 668, 675 (2014).

Según surge del expediente, el promovente presentó evidencia mediante la cual acreditó haber sido nombrado heredero e instituido como albacea testamentario de la señora Martínez Hernández, quien compareció como parte otorgante en la Escritura Núm. 15 y fue cónyuge del señor Rivera Rodríguez, quien, a su vez, compareció como parte otorgante en la Escritura Núm. 14. No obstante, es preciso señalar que, en cuanto a la Escritura Núm. 22, ni el promovente ni su causante comparecieron como otorgantes del referido instrumento público, así como tampoco requirieron los servicios profesionales del licenciado Nieves Marrero para su autorización.

A base de lo anterior, determinamos que el promovente estaba facultado para presentar la *Queja* AB-2023-135 en su capacidad como heredero y albacea testamentario de la señora Martínez Hernández.

Pasemos a evaluar si el licenciado Nieves Marrero infringió los Arts. 2 y 14 de la Ley Notarial, *supra*, así como los postulados esbozados en los Cánones 12, 18 y 35 del Código de Ética Profesional, *supra*.[14] Para ello acogemos la recomendación de la ODIN referente a la atención de las controversias según el instrumento público correspondiente.

**B. Controversias relacionadas con las Escrituras Núm. 14 y Núm. 15**

En relación a la conducta desplegada por el notario en cuanto a las Escrituras Núm. 14 y Núm. 15 **(otorgadas el 25 de julio de 2008),** surge del expediente que el licenciado Nieves Marrero presentó ante el Registro las copias certificadas de ambos instrumentos públicos **el 21 de abril de 2015, esto es poco más de 6 años y 8 meses desde que los autorizó.** Ante este escenario, resolvemos que el notario debió ejercer un mayor grado de competencia y diligencia en su gestión profesional. El hecho reseñado demuestra que el periodo que transcurrió desde la fecha de autorización hasta la fecha de presentación al Registro fue excesivo y ello refleja una falta de diligencia para realizar las labores que le encomendaron -en su momento- las partes otorgantes. Por consiguiente, concluimos que el licenciado Nieves Marrero

---

[14] Véase nota al calce número 1 de esta Opinión *Per Curiam*.

incumplió con lo dispuesto en los **Cánones 12 y 18 del Código de Ética Profesional**, *supra*.

Por otra parte, el promovente también cuestionó la validez de los negocios jurídicos instrumentados en las Escrituras Núm. 14 y Núm. 15, en particular la eficacia jurídica tanto de la donación como de la compraventa allí dispuestos. Específicamente, señaló que ambos instrumentos públicos fueron suscritos sin la comparecencia de una parte otorgante requerida.[15] Sobre este planteamiento, es preciso apuntar que, en virtud de la fe pública notarial, se presume que los documentos instrumentados cumplen con la legislación vigente que pueda afectar el negocio jurídico que se realiza en presencia de un notario.

Ante esto, conviene señalar que el procedimiento adecuado para determinar la validez sustantiva de los negocios instrumentados en las Escrituras Núm. 14 y Núm. 15 corresponde a una acción civil ordinaria y no como parte de un procedimiento disciplinario contra el notario autorizante. De hecho, el promovente presentó el caso Civil Núm. EAC2017-0350 ante el foro de primera instancia y allí alegó la nulidad de ambos instrumentos públicos. Finalmente, el promovente desistió de la acción civil y el foro primario dictó una *Sentencia por desistimiento* el 29 de

---

[15] Al respecto, el Director de la ODIN alude al asunto de la enajenacion de bienes conyugales según dispuesto en los Arts. 91 y 1313 del derogado Código Civil de 1930, 31 LPRA ant. secs. 284 y 3672, los cuales estaban vigentes a la fecha en que se autorizaron ambas escrituras. Véase *Informe de la ODIN*, pág. 15.

mayo de 2025 mediante la cual archivó -sin perjuicio- la demanda presentada por el promovente.[16]

Por otra parte, el promovente también cuestionó la ausencia de advertencias detalladas en las Escrituras Núm. 14 y Núm. 15, en particular aquellas sobre la comunidad de bienes y la deuda contributiva del CRIM. Ante esto, acogemos lo expuesto en el Informe de la ODIN referente a que el licenciado Nieves Marrero no actuó en contravención a la Ley Notarial al omitir consignar en las Escrituras Núm. 14 y Núm. 15 unas advertencias específicas sobre:

> (1) los efectos legales de la comunidad de bienes, pues el inciso (g) del Artículo 15 de la Ley Notarial, supra, dispone la obligatoriedad de incluir esta advertencia en las escrituras de compraventa en las que se efectúe un negocio jurídico sobre una porción abstracta e indefinida en común pro indiviso **de un terreno**, no así en aquellos instrumentos en los que se efectúe un negocio jurídico sobre una porción abstracta e indefinida en pro indiviso **de una estructura**, y
>
> (2) la necesidad y conveniencia de obtener una certificación de deuda contributiva del CRIM, previo a llevar a cabo un negocio jurídico que conlleve la transferencia del dominio sobre un bien inmueble, ya que la **obligatoriedad de incluir expresamente esta advertencia en los instrumentos públicos** surgió por disposición de la Ley Número 162, aprobada el 6 de agosto de 2908, es decir en una fecha posterior a la autorización de la[s] Escritura[s] Número 14 y Número 15 de 2008. (Énfasis en el original y escolio omitido).[17]

---

[16] Véase *Sentencia por desistimiento*, Anejo XVII del Informe de la ODIN.

[17] *Informe de la ODIN*, pág. 17.

**C. Controversias relacionadas con la Escritura Núm. 22**

Según expuesto previamente, en la Escritura Núm. 22 sobre *Compraventa* la señora Rivera Farrell vendió la Finca Núm. 6173 a los esposos Rivera-Acosta. Luego de examinar el mencionado instrumento público, se comprueba que el notario, como fedatario, hizo constar de forma errónea que dicho inmueble estaba libre de cargas y gravámenes, que se encontraba sito en otra demarcación y tenía el número de catastro de otro inmueble. Asimismo, la ODIN nos indica en su Informe que, luego de examinar las constancias del Registro, la Escritura Núm. 22 no ha sido presentada para su calificación e inscripción.

En conformidad a los hechos mencionados, surge que el notario no llevó a cabo una labor capaz y diligente al autorizar la compraventa que condujo al otorgamiento de la Escritura Núm. 22. Específicamente, el licenciado Nieves Marrero incurrió en faltas al identificar los datos registrales y de catastro del inmueble en cuestión, así como al hacer constar que la propiedad estaba libre de cargas y gravámenes, cuando ello era contrario a la realidad registral. Lo anterior infringe el principio de fe pública registral dispuesto en el Art. 2 de la Ley Notarial, *supra*. A su vez, esa falta de cuidado en el desempeño de su función notarial nos lleva a determinar que el notario incumplió con el deber de competencia y diligencia asociado con el Art. 14 de la Ley Notarial, *supra*, y el Canon 18 del Código de Ética Profesional, *supra*.

Asimismo, concluimos que el licenciado Nieves Marrero actuó contrario al deber de sinceridad y honradez esbozado en el Canon 35 del Código de Ética Profesional, *supra*, al faltar a su deber de proveer información exacta y completa en el negocio jurídico que instrumentó mediante la Escritura Núm. 22.

Así pues, luego de evaluar la conducta del notario, a la luz de la normativa aplicable, el expediente del caso, así como el Informe presentado por la ODIN, existen fundamentos suficientes para concluir que el licenciado Nieves Marrero infringió los mencionados artículos de la Ley Notarial, así como los referidos cánones del Código de Ética Profesional, *supra*.

IV

Procede que determinemos la sanción disciplinaria a imponerle al licenciado Nieves Marrero por la conducta exhibida. Al momento de fijar la misma, procede que evaluemos los factores siguientes: (1) la reputación del abogado en la comunidad; (2) su historial disciplinario; (3) si la conducta es una aislada; (4) si medió ánimo de lucro; (5) si presentó una defensa frívola de su conducta; (6) si ocasionó perjuicio a alguna parte; (7) si resarció al cliente; (8) si demostró aceptación o arrepentimiento sincero por la conducta que le fue imputada, y (9) otros atenuantes o agravantes que surjan de los hechos. *In re* Vázquez Garced, supra; *In re* Barreto Cintrón, 2026 TSPR 17, 217 DPR ___ (2026); *In re* Santiago Rojas, 2025 TSPR 30, 215 DPR ___ (2025); *In re* Soto Peña, *supra*, págs. 680-681; *In re* Rivera

Justiniano, *supra*, págs. 407-408; *In re* Ocasio Bravo, 209 DPR 1043, 1060-1061 (2022).

En la evaluación de la sanción a aplicarse, acogemos lo expuesto por la ODIN en su Informe. En particular, consideramos como agravante el hecho de que de las expresiones incluidas por el notario en su contestación a la *Queja* no surge una razón o justificación para explicar su desempeño profesional en relación con los negocios jurídicos en cuestión, así como tampoco asumió responsabilidad por ello. Al respecto, según esbozado por la ODIN, el notario "no explicó el porqué de la dilación incurrida para presentar los documentos autorizados en el año 2008 ante el [Registro], como tampoco intervenir como fedatario en la otorgación de la [Escritura Núm. 22], cuando el bien inmueble objeto del negocio jurídico se encontraba inmerso en un proceso legal". Además, el licenciado Nieves Marrero tampoco advirtió en dicho instrumento público sobre el litigio ante el foro de primera instancia y sus posibles consecuencias en el referido negocio jurídico.

Por otra parte, consideramos como atenuante el hecho de que el presente es el primer proceso disciplinario en contra del licenciado Nieves Marrero en su función como notario.

Así pues, evaluados los hechos, el derecho aplicable y tras ponderar la totalidad de las circunstancias, procede que impongamos como sanción la suspensión inmediata del ejercicio de la notaría por un término de tres (3) meses.

V

Por las razones antes esbozadas, suspendemos de forma inmediata al licenciado Nieves Marrero del ejercicio de la notaría por un término de tres (3) meses.

En consecuencia, se ordena al licenciado Nieves Marrero contratar, a sus expensas, un tercer notario para encaminar el proceso de rectificación y ratificación para atender las faltas señaladas en la Escritura Núm. 22 sobre *Compraventa* autorizada el 7 de mayo de 2022, de forma tal que se pueda presentar el mencionado instrumento público sin errores ante el Registro, para su oportuna calificación e inscripción. Asimismo, se apercibe al licenciado Nieves Marrero de que en el futuro deberá velar fiel y estrictamente el cumplimiento de la Ley Notarial, el Reglamento Notarial, las Reglas de Conducta Profesional, así como las leyes que inciden en el ejercicio del notariado, so pena de la imposición de sanciones más severas.

Además, se le impone al licenciado Nieves Marrero el deber de notificar inmediatamente a todos sus clientes sobre su inhabilidad para prestar los servicios notariales contratados y devolverles tanto los expedientes como los honorarios recibidos por trabajos de índole notarial no realizados. De igual manera, deberá informar inmediatamente de su suspensión a cualquier agencia, entidad, foro judicial o administrativo en los que tenga algún asunto de índole notarial pendiente. A su vez, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, contado a partir de la

notificación de esta Opinión *Per Curiam* y la Sentencia correspondiente. No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría, de solicitarlo en el futuro.

Por otra parte, se ordena al Alguacil de este Tribunal incautar la obra notarial que se encuentra bajo la custodia del licenciado Nieves Marrero al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales del licenciado Nieves Marrero queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Se dictará Sentencia en conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

*In re*:

|  |  |  |
|---|---|---|
| Joaquín Nieves Marrero | AB-2023-135 | Conducta Profesional |
| (TS-8371) | | |

SENTENCIA

En San Juan, Puerto Rico a 6 de mayo de 2026.

Por los fundamentos expuestos en la Opinión *Per Curiam* que antecede, la cual se hace formar parte íntegra de la presente Sentencia, suspendemos de forma inmediata al Lcdo. Joaquín Nieves Marrero del ejercicio de la notaría por un término de tres (3) meses.

En consecuencia, se ordena al licenciado Nieves Marrero contratar, a sus expensas, un tercer notario para encaminar el proceso de rectificación y ratificación para atender las faltas señaladas en la Escritura Núm. 22 sobre Compraventa autorizada el 7 de mayo de 2022, de forma tal que se pueda presentar el mencionado instrumento público sin errores ante el Registro, para su oportuna calificación e inscripción. Asimismo, se apercibe al licenciado Nieves Marrero de que en el futuro deberá velar fiel y estrictamente el cumplimiento de la Ley Notarial, el Reglamento Notarial, las Reglas de Conducta Profesional, así como las leyes que inciden en el ejercicio del notariado, so pena de la imposición de sanciones más severas.

Además, se le impone al licenciado Nieves Marrero el deber de notificar inmediatamente a todos sus clientes sobre su inhabilidad para prestar los servicios notariales contratados y devolverles tanto

los expedientes como los honorarios recibidos por trabajos de índole notarial no realizados.   De igual manera, deberá informar inmediatamente de su suspensión a cualquier agencia, entidad, foro judicial o administrativo en los que tenga algún asunto de índole notarial pendiente.   A su vez, deberá acreditar y certificar ante este Tribunal el cumplimiento con lo anterior dentro del término de treinta (30) días, contado a partir de la notificación de la Opinión *Per Curiam* y esta Sentencia.   No hacerlo pudiera conllevar que no se le reinstale al ejercicio de la notaría, de solicitarlo en el futuro.

Por otra parte, se ordena al Alguacil de este Tribunal incautar la obra notarial que se encuentra bajo la custodia del licenciado Nieves Marrero al igual que su sello notarial para entregarlos al Director de la Oficina de Inspección de Notarías para el correspondiente examen e Informe.

En virtud de su suspensión inmediata del ejercicio de la notaría, la fianza que garantiza las funciones notariales del licenciado Nieves Marrero queda automáticamente cancelada. Esta fianza se considerará buena y válida por tres (3) años después de su terminación, en cuanto a los actos realizados durante el periodo en que ésta estuvo vigente.

Notifíquese por correo electrónico.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.


                                        Javier O. Sepúlveda Rodríguez
                                         Secretario del Tribunal Supremo